HAL TURNER HARGROVE v. PLUMBING AND HEATING SERVICE OF GREENSBORO, INC., AND BURLINGTON INDUSTRIES, INC.

No. 7615SC305

(Filed 6 October 1976)

1. **Negligence § 29— uncovered hole — injury to delivering truck driver — negligence**

    In an action by the driver of an oil truck to recover for injuries sustained when he stepped in a hole while making a delivery to defendant manufacturer, the evidence was sufficient for the jury on the issue of negligence by defendant plumbing company and defendant manufacturer where it tended to show: the hole had been dug by defendant plumbing company for the purpose of repairing an underground steam pipe in an area near the manufacturer's oil tanks that was normally level, grassy and unobstructed; defendant manufacturer knew, and defendant plumbing company should have known, that the hole contained boiling water from the broken pipe, but neither maintained an adequate barricade around the hole; the accident occurred at night; the area was dimly lit; a fog of steam covered the hole; steam was ordinarily present around the tanks; based on previous visits, plaintiff driver had reason to expect that the area near the tanks was level and free of hazards; and plaintiff driver had no knowledge of the hole and did not see it.

2. **Negligence § 35— failure to see hole — walking into steam — contributory negligence**

    The driver of an oil truck was not contributorily negligent as a matter of law in failing to see at night a hole in the ground which was open, unmarked and covered by a fog of steam near defendant manufacturer's oil tanks since the hole was not an obvious hazard; nor was the driver contributorily negligent as a matter of law in

1

walking into the steam where he knew from prior experience that the area was level and grassy and had no reason to expect the hole.

**3. Indemnity § 2— construction of agreement**

An agreement in which a plumbing company agreed to "assume entire responsibility" so that a manufacturer "shall not be liable" for injuries or damages during the course of work to be done by the plumbing company constituted an indemnity agreement requiring the plumbing company to indemnify the manufacturer for any liability arising as a consequence of the work by the plumbing company for the manufacturer, including any negligence by the manufacturer toward third persons.

APPEAL by defendants from *Walker, Judge.* Judgment entered 7 November 1975 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 25 August 1976.

Plumbing and Heating Service of Greensboro, Inc. (Plumbing), and Burlington Industries, Inc. (Burlington), codefendants in this tort action, appeal from a judgment for Hal Turner Hargrove, plaintiff. In addition, Plumbing appeals from a judgment holding it liable to indemnify Burlington for its share of the damages awarded to Hargrove.

Evidence tended to show the following:

Hargrove, driver of an oil tank truck, was injured when he stepped in a hole while making a delivery to Burlington. The accident occurred near oil storage tanks which were located at least 75 feet beyond Burlington's parking lot at the bottom of a steep grassy slope. The area in front of the tanks was smooth and grassy. Some oil tanks, and the electric pumps used to fill them, were above the ground. Other tanks were below ground. The tanks were heated with steam so that the heavy oil would flow freely. Some of this steam always escaped and hung near the ground around the oil tank area. It was common to see this fog of steam, and it could rise to the height of a man's head if the weather was right. In order for oil truck drivers to make deliveries they had to scramble down the hill, go to the pumps, turn them on and off and operate valves that directed the flow of oil. Occasionally, when several trucks were waiting to unload, the pumps remained on and the drivers did not go down the hill. Drivers frequently delivered oil at night.

Sometime in the winter of 1973 an underground steam pipe broke near the oil tanks. Burlington employed Plumbing to

make the repairs, and they entered into a contract regarding the repairs which contained an alleged indemnity agreement.

On 19 January 1974, two of Plumbing's workmen dug a hole, perhaps two feet deep and three feet by five feet across, uncovering the steam pipe. The pipe leaked water and steam into the hole and, therefore, they could not continue their work. According to their testimony they were ordered to barricade the hole and did so with three 55 gallon barrels and some lumber. Their supervisor did not examine the barricade. Thereafter Plumbing left the site and did not return until Hargrove was injured. Burlington later discovered the hole open, unprotected and full of boiling hot water. According to Burlington's evidence, its employees partly covered the open hole with a sheet of plywood and a 2″ x 4″, and placed a 55 gallon drum in front of it.

Hargrove delivered oil to Burlington three times after Plumbing dug the hole. Records show he was there on 29 January 1973, but he did not remember this trip. He was there again on 10 February 1973, but because the pumps were running he did not have to go down to the oil tanks and did not see the hole or the barricades.

At 5:30 a.m. on 12 February 1973, Hargrove arrived at the Burlington plant. He went down the slope to the tanks to turn on the pumps. A fog of steam hung over the area in front of the tanks. In some places the steam rose as high as Hargrove's face, and he was concerned that it would fog his glasses. Hargrove first went to the tanks on the left to check fuel capacity gauges. Then he walked across the ground in front of the tanks in order to reach the valves directing the oil flow. He walked around the area where the steam rose up to his face, and, in so doing, he stepped into the hole full of boiling water. Hargrove testified that he did not know the hole was there. He saw neither the hole nor any barricades, but he admitted he was not watching where he put his feet. The next day the plywood was found beside the hole rather than across it.

Two other drivers who delivered oil in the days immediately before Hargrove was injured testified that they did not see any barrels or barricades. One witness who delivered oil on the night of 8 February 1973 testified that he saw the hole just in time to avoid falling into it.

*Spencer B. Ennis and Latham, Wood and Cooper, by Thomas D. Cooper, Jr., for plaintiff appellee.*

*Smith, Moore, Smith, Schell and Hunter, by Martin N. Erwin and Robert Wicker, for Burlington Industries, Inc., defendant appellant and defendant appellee.*

*Perry C. Henson and Ronald G. Baker for Plumbing and Heating Service of Greensboro, Inc., defendant appellant.*

ARNOLD, Judge.

[1]   Both defendants assign error to the denial of their motions for directed verdicts, judgments notwithstanding the verdict and new trials. These motions require the trial court to consider the evidence in the light most favorable to the nonmoving party, Hargrove, to resolve all conflicts in his favor and to accept all inferences favorable to him. *Teachey v. Woolard,* 16 N.C. App. 249, 191 S.E. 2d 903 (1972). The evidence most favorable to Hargrove tends to show that Plumbing and Burlington controlled the area in front of Burlington's oil tanks, that the area was within the scope of the invitation to drivers such as Hargrove, and that these drivers walked across this area while performing their duties. The site of the accident was normally level, grassy and unobstructed. However, Plumbing had dug a hole there. The evidence further shows that Burlington knew, and Plumbing should have known, that the hole contained boiling water, but neither Plumbing nor Burlington maintained an adequate barricade around the hole. Finally, the evidence tends to show that the accident occurred at night, that the area was dimly lit, that a fog of steam covered the hole, that the steam was ordinarily present around the tanks, that Hargrove, based on previous visits, had reason to expect that the area in front of the oil tanks was level and free of hazards; and that he had no knowledge of the hole and did not see it before falling into it. Based on these facts there is a question presented on the issue of defendants' negligence.

[2]   Burlington and Plumbing argue that plaintiff was contributorily negligent in failing to see two open and obvious conditions which he should have seen and avoided, the hole and the steam. They contend that there was no duty to warn plaintiff of such obvious dangers, and therefore they were not negligent. We disagree. The hole was open, unmarked and shrouded in fog at night. We cannot say as a matter of law that the hole was an

obvious hazard. While the steam was obvious, in itself it was not dangerous. The question is whether plaintiff was contributorily negligent as a matter of law by walking into the steam.

A person must use due care for his own safety. If he fails to do so and is injured he is contributorily negligent and cannot recover from others whose negligence also caused his injuries. A reasonable person must look out for and discover reasonably foreseeable hazards since the law is unable to protect those who have eyes and will not see. *Harrison v. North Carolina R. Co.*, 194 N.C. 656, 140 S.E. 598 (1927). Defendants cite many cases in support of this rule, but these cases are distinguishable from the case before us.

In *Holland v. Malpass*, 266 N.C. 750, 147 S.E. 2d 234 (1966), plaintiff, an automobile mechanic, fell over a jack that was on the garage floor in the aisle between cars. Plaintiff had walked through this aisle several times that day, but someone had placed the jack there while he was not looking. Plaintiff admitted that he knew, as an experienced mechanic, that garage workers leave tools lying on the floor. On the facts, the court said:

> "The plaintiff's evidence fails to support any action by the defendant or his employees creating a hazard which one walking in the work space of a repair garage should not reasonably expect and watch for. It also shows that the plaintiff, an experienced garage worker, failed to look before he stepped where he should have anticipated some obstruction was likely. Had he done so he would have seen the [jack] in the well-lighted space. The invitee must use reasonable care, commensurate with the normal activities of the type of establishment whose invitation he accepts." 266 N.C. at 752, 147 S.E. 2d at 236.

As *Holland* indicates, a person must be on the lookout for reasonably foreseeable hazards. A jack on a garage floor is common; its presence and the danger it creates are reasonably foreseeable. On the other hand, an unmarked hole in a well travelled area is abnormal. Since the hole is abnormal the invitee has no reason to foresee its presence and no reason to be on the lookout for it. Hargrove had no reason to expect the hole, and since he knew from prior experience that the area in front of the oil tanks was level and grassy, it was not unreasonable as a matter of law for him to walk through the rising steam.

*Doggett v. Welborn,* 18 N.C. App. 105, 196 S.E. 2d 36 (1973), *cert. den.* 283 N.C. 665, 197 S.E. 2d 873 (1973), relied on by defendants, also indicates that a plaintiff is contributorily negligent where *he confronts a reasonably foreseeable danger.* In that case, plaintiff drove her car into a dense cloud of smoke that covered the highway. She knew that a pickup truck had preceded her into the smoke. She knew that other vehicles were on the road. Because of her knowledge the court held she was contributorily negligent as a matter of law in colliding with the truck ahead of her. She blindly drove into smoke concealing a reasonably foreseeable hazard, and in this she was negligent. In the case at bar plaintiff had no knowledge of the hole which was hidden in the steam.

**[3]**   Defendant Plumbing also appeals from the judgment allowing Burlington to recover indemnification. The agreement, as pertinent to this appeal, is as follows:

> "It is understood and agreed that in doing or causing this work to be done, you [Plumbing] are acting in the capacity of an independent contractor. You shall furnish all labor materials, equipment and supervision, except as may be otherwise noted in this contract. *You assume entire responsibility for all injuries sustained or damages arising in the course of said work,* or from the use or control of our equipment by you, regardless of its condition, and we shall not be liable for any such injuries or damages." (Emphasis added.)

Plumbing's position is that the above language does not constitute an indemnity agreement but simply establishes the relationship of contractee—independent contractor as opposed to that of master and servant. In the alternative Plumbing argues that the agreement was a mere exculpatory clause intended to exculpate Burlington from injuries arising to Plumbing's workers.

We accept Burlington's position that the language in the agreement does constitute an indemnity agreement requiring Plumbing to indemnify Burlington for any liability arising as a consequence of the work being performed by Plumbing for Burlington.

In *Markham v. Duke Land and Improvement Co.,* et al, 201 N.C. 117, 158 S.E. 852 (1931), the City of Durham allowed Duke to install glass bricks in a city sidewalk to illuminate a

basement beneath a Duke building. Duke agreed to "relieve the city from all responsibility and all liability" that might result from the construction. Seven years later a tenant occupied Duke's building, and at that time a pedestrian was injured by stepping in a hole in the sidewalk. In a suit against the tenant, the city and Duke, the jury found the tenant primarily liable and the city secondarily liable. Our Supreme Court upheld the trial court's determination that the agreement between the parties was an indemnity contract requiring Duke to reimburse the city.

The language of the agreement in *Markham* is essentially the same as the language we must construe. Duke agreed to "relieve the city from all responsibility and all liability" whereas in the agreement before us Plumbing agreed to "assume entire responsibility" so that Burlington "shall not be liable" for any injuries or damages during the course of the work. The plain language constituted an indemnity agreement.

Plumbing next contends that if it be conceded there is an indemnity agreement it does not indemnify Burlington from the consequences of its own negligence towards third persons. Plumbing argues that the plain import of the language is that Burlington shall not be liable for injuries or damages arising during the course of the work to Plumbing's employees. We cannot accept such a narrow construction of the agreement, but find that it provides for full indemnity for all negligence, including any negligence by Burlington towards third persons. We are "cognizant of the fact that in the ordinary case the occasion for [the indemnitee] seeking indemnity would not arise unless it had been guilty of some fault, for otherwise no judgment could be recovered against it." *Beachboard v. Southern Railway Co.*, 16 N.C. App. 671, 679, 193 S.E. 2d 577 (1972), *cert. den.* 283 N.C. 106, 194 S.E. 2d 633 (1973). The language employed requires Plumbing to indemnify Burlington for injuries sustained by third parties injured by the negligence of Plumbing or Burlington, or by Plumbing and Burlington.

Ultimate liability by Plumbing to Burlington is in contract, not tort, and thus we need not consider Plumbing's contention that any negligence on its part was insulated by the subsequent negligence of Burlington.

We have reviewed all the assignments of error by both appellants, including those directed to the trial court's charge to the jury. We find no error prejudicial to either appellant.

No error.

Chief Judge BROCK and Judge PARKER concur.