ELIZABETH B. COOPER, ADMINISTRATRIX OF THE ESTATE OF GARY WAYNE COOPER, DECEASED v. H. B. OWSLEY & SON, INC., BARON BROWN RUSSELL, JR., POTAIN, INC., AND KING-HUNTER INC.

No. 7726SC986

(Filed 16 October 1979)

1. **Indemnity § 1— indemnity provision in equipment lease—validity—public policy**

    A provision in a lease of a crane in which the lessee agreed to indemnify and hold the lessor harmless from all liabilities "for damages or losses of any kind whatsoever, whether to persons or property or for any other loss arising from the use of, transportation of, or in any way connected with the said equipment or any part thereof, from whatever cause arising" is not void as against public policy.

2. **Indemnity § 2.2— indemnity provision in equipment lease—negligence by indemnitee**

    An agreement by the lessee of a crane to indemnify the lessor for liability incurred by the lessor for injuries sustained by third persons "arising from the use of, transportation of, or in any way connected with" the leased crane "from whatsoever cause arising" included liability arising from the negligence of the lessor or one of its employees for whose acts it was derivatively liable.

3. **Indemnity § 2.1— indemnity provision in equipment lease—negligence by lessor's employee—absence of lessee's employees from scene**

    The lessee of a crane was not released from its obligation to indemnify the lessor for liability incurred by the lessor for the death of a person when a portion of the leased crane fell on him while being dismantled by the fact that a technician provided by the lessor for the dismantling process may have exceeded the limits of the functions he was supposed to perform in the dismantling process or by the fact that the lessor delegated its responsibility to dismantle the crane to another company and removed its own employees from the scene.

**4. Indemnity § 2.1— indemnity provision—attorney fees and expenses of defending suit not covered**

     An agreement by the lessee of a crane to indemnify the lessor for liability incurred by the lessor for injuries to persons or property "arising from the use of, transportation of, or in any way connected with" the leased crane "from whatsoever cause arising" did not cover attorney fees and other expenses incurred by the lessor in the defense of an action to recover for the death of a person who was killed when a portion of the crane fell on him.

APPEAL by the defendants, King-Hunter, Inc., and cross-appeal by H. B. Owsley & Son, Inc., from *Griffin, Judge.* Judgment signed 7 July 1977 as of 5 June 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 31 August 1978.

This is a wrongful death action. Plaintiff's decedent, an employee of Carolina Crane and Rigging Corporation (Carolina), was killed on 23 June 1975 when the top portion of a large tower crane then being dismantled fell upon and crushed him. The crane was owned by the defendant H. B. Owsley & Son, Inc. (Owsley), and was leased by it to the defendant King-Hunter, Inc. (King-Hunter). The defendant Baron Brown Russell, Jr. (Russell) was an employee of Owsley. Plaintiff alleged that the death of her decedent was proximately caused by the joint and several negligence of the defendants.

Owsley, denying it was negligent, filed a cross-claim against King-Hunter for indemnity, alleging that in event plaintiff should be adjudged entitled to recover any amount from it, it was entitled to be indemnified by King-Hunter under the provisions of the equipment rental contract by which it had leased the crane to King-Hunter. A partial summary judgment was entered on the cross-claim. From this judgment both Owsley and King-Hunter have appealed, the trial court having determined pursuant to G.S. 1A-1 Rule 54(b) that there was no just reason for delay of appeal. This appeal, therefore, involves only the questions whether, under their equipment rental agreement, Owsley has the right to be indemnified by King-Hunter for losses Owsley may sustain by reason of plaintiff's wrongful death action and, if so, what the extent of such indemnification should be.

Admissions in the pleadings and materials filed in connection with Owsley's motion for summary judgment on its cross-claim

against King-Hunter for indemnity show that there is no genuine issue as to the following material facts:

On and prior to 23 June 1975 King-Hunter was the general contractor building a new United States Courthouse in Winston-Salem. For use on that project, King-Hunter leased from Owsley a large tower crane under a written equipment rental contract dated 15 May 1974. This agreement provided that the rental period should begin on the date of the bill of lading under which the crane was shipped to the Lessee and should end on the date of return of the crane to the Lessor's siding. The agreement also contained, among others, the following provisions:

> 6. *Operating personnel:* Lessee will furnish, at its own expense, all operating and maintenance personnel employed on leased equipment, and shall employ none who are incompetent to perform their duties in a careful and diligent manner.
>
> \*   \*   \*
>
> 11. *Liability of Lessee:* It is expressly understood and agreed that, during the rental period, Lessor shall not be liable for damages or losses of any kind whatsoever, whether to persons or property or for any other loss arising from the use of, transportation of, or in any way connected with the said equipment or any part thereof, from whatsoever cause arising, and Lessee agrees to indemnify and hold Lessor harmless from all such liabilities. . . .
>
> \*   \*   \*
>
> 16. *Responsibility of Lessee:* Freight charges, unloading, erection, rigging, and servicing of the equipment will be the responsibility of the Lessee, as well as dismantling and loading for shipping out at the completion of the contract.

The agreement also provided:

> Technician furnished [by Owsley] free for five (5) days during erection and five (5) days during dismantling.

Pursuant to this equipment rental contract the tower crane was shipped to Winston-Salem. To fulfill its responsibility for erection and dismantling of the crane as imposed on it by paragraph 16 of the equipment rental contract, King-Hunter contract-

ed with Carolina Crane and Rigging Corporation for Carolina to furnish men and equipment to erect and dismantle the crane at the job site. This contract between King-Hunter and Carolina also contained the statement: "Erector from H. B. Owsley to be on job during erection and dismantling." In June 1975 King-Hunter completed its use of the tower crane in connection with its construction project and accordingly notified Carolina to dismantle and remove the crane from the job site. Owsley was also notified and requested to send its technician. For this purpose Owsley assigned its employee, Russell, to serve as technician during the dismantling process.

Russell reported to the job site on 18 June 1978 and on that date dismantling of the crane began. Initially, the dismantling was accomplished by the "de-telescoping" process in which sections of the tower mast are removed one-by-one, the crane itself being utilized to lower these to the ground. During this process the crane is supported by a cage, the top portion of which is attached to the bottom of the crane and the bottom portion of which is temporarily attached to the tower mast at a point below the section of the mast being removed. The cage is equipped with a hydraulic ram which permits the raising of the crane for removal of the intervening tower mast section and then lowering of the crane for temporary attachment to the next tower section until the cage itself can be lowered and then reattached to the tower mast, after which the whole process can be repeated. This de-telescoping process took place during the three days beginning Wednesday, 18 June 1975, and ending Friday, 20 June 1975. During this de-telescoping period the crane was operated by a King-Hunter employee. At the end of the day on Friday, the height of the hook of the crane from the ground had been reduced from approximately 170 feet to 40 feet, and the crane had been lowered as far as it could be by the de-telescoping process. The next step in the dismantling process was to have a mobile crane come to the site and remove the top portion of the tower crane.

On Monday morning, 23 June 1975, plaintiff's decedent, Gary Wayne Cooper, an employee of Carolina, came to the job site with a mobile crane to be used in removing the remaining portions of the tower crane. On that date no employee of King-Hunter was present, the only persons present being the employees of Carolina, and Russell, the technician furnished by Owsley. The

process of dismantling the tower crane continued, for this pur-
pose the mobile crane being first utilized to remove the main
boom and the counterweights from the counterboom. After this
was done, the next step was to use the mobile crane to remove
the counterboom itself from the tower crane. At this point the
counterboom was "up against the building," and to bring it into
position where it could be reached by the mobile crane it was
necessary to swing it around by rotation of the turntable. For this
purpose Russell entered the cabin of the tower crane and began
to operate the controls to rotate the counterboom. As he did so,
the tower crane began to tilt, the bolts temporarily attaching the
top portion of the crane to the tower sheared, and the crane fell
upon and killed Gary Wayne Cooper, who was operating the
mobile crane below.

The court allowed Owsley's motion for summary judgment on
its cross-claim for indemnity against King-Hunter to the extent of
ordering that Owsley recover of King-Hunter indemnity in full for
any amount the plaintiff is adjudged entitled to recover of Owsley
in this action. From this order both Owsley and King-Hunter have
appealed.

*Womble, Carlyle, Sandridge & Rice by H. Grady Barnhill,
Jr., and W. G. Champion Mitchell for King-Hunter, Inc.*

*Daniel W. Donahue and Ronald G. Baker for H. B. Owsley &
Son, Inc.*

PARKER, Judge.

APPEAL OF KING-HUNTER, INC.

[1] King-Hunter first contends that the summary judgment in
favor of Owsley on its cross-claim for indemnity against King-
Hunter was in error because the indemnity agreement embodied
in paragraph 11 of the equipment rental contract between Owsley
and King-Hunter is void as against public policy. In support of
this contention, King-Hunter points out that plaintiff alleged in
her amended complaint that Owlsey's negligence was one of the
proximate causes of her decedent's death. Specifically, she alleged
both that Owsley was independently negligent in furnishing an
unqualified technician, Russell, who was not adequately trained to
dismantle the crane in a safe manner, and that Owsley was

derivatively liable for Russell's negligence in dismantling the crane in an unsafe manner in that, in the dismantling process which was followed, one of the crane's connecting parts was left too weak to support the top of the crane and in that Russell negligently rotated the crane while it was in this weakened condition. King-Hunter contends that it is against public policy to permit Owsley to be indemnified against its own negligence or against that of its employee for which it is responsible. We perceive, however, no sound reason why this must be so. In this connection we find the following statement from the opinion of our Supreme Court in *Gibbs v. Light Co.*, 265 N.C. 459, 144 S.E. 2d 393 (1965) particularly applicable:

> There is a distinction between contracts whereby one seeks to wholly exempt himself from liability for the consequences of his negligent acts, and contracts of indemnity against liability imposed for the consequences of his negligent acts. The contract in the instant case is of the latter class and is more favored in law.

265 N.C. at 467, 144 S.E. 2d at 400.

Paragraph 11 of the equipment rental contract did not exempt Owsley from liability to third persons resulting from its negligence or that of its employees, nor did the summary judgment here appealed from have that effect. On the contrary, Owsley remains a party defendant in this action and may ultimately be found liable to plaintiff should plaintiff prevail against it at the trial. By paragraph 11 King-Hunter, as Lessee, did agree, as part of the consideration for the lease of the crane to it by Owsley, to indemnify and hold Owsley harmless from all liabilities "for damages or losses of any kind whatsoever, whether to persons or property or for any other loss arising from the use of, transportation of, or in any way connected with the said equipment or any part thereof, from whatsoever cause arising." We see no reason of public policy why King-Hunter should be excused from honoring this agreement. Agreements achieving much the same result made by insurance companies writing policies of liability insurance have long been enforced by the courts. Enforcement of an indemnity agreement such as is now before us would have no greater tendency to promote carelessness on the part of the indemnitee than would enforcement against the insurer of a

policy of liability insurance. "And, although there is some earlier authority to the contrary, it is now the prevailing rule that a contract may validly provide for the indemnification of one against, or relieve him from liability for, his own future acts of negligence provided the indemnity against such negligence is made unequivocally clear in the contract." 41 Am. Jur. 2d, Indemnity, § 9, pp. 693-94. This is particularly true where, as here, the parties presumably dealt at arms length and without the exercise of superior bargaining power. See Annot., 68 A.L.R. 3rd 7 (1976) § 3, pp. 29-34. We hold that the indemnity agreement in paragraph 11 of the equipment rental agreement between Owsley and King-Hunter is not void as against public policy.

[2] King-Hunter next contends that, even if not void as against public policy, the indemnity agreement in paragraph 11 was not intended by the parties to be operative under the circumstances of this case. In support of this contention King-Hunter asserts in its brief that "[t]he clear intent of the indemnity provision is to protect Owsley from liability arising from its ownership of the crane, not from negligent acts of its agents or of itself." We do not agree with this assertion. Initially, we note that the language employed by the parties in paragraph 11 of their agreement does not lend itself to so narrow a construction. As already noted, by paragraph 11 King-Hunter agreed to indemnify and hold Owsley harmless from all liabilities "for damages or losses of any kind whatsoever, whether to persons or property or for any other loss *arising from the use of, transportation of, or in any way connected with the said equipment or any part thereof, from whatsoever cause arising.*" (Emphasis added.) This language is hardly compatible with the construction for which King-Hunter contends. More importantly, to construe the language of paragraph 11 as King-Hunter contends renders it largely purposeless and deprives it of nearly all meaning. The occasions on which Owsley could be found liable for some claim arising from its ownership of the crane when neither it nor one of its employees was at fault would be rare indeed. What was said in *Beachboard v. Railway Co.*, 16 N.C. App. 671, 193 S.E. 2d 577 (1972) is applicable here:

> By inserting the provision in their contract the parties obviously contemplated that there might be claims for indemnity, and they must have been cognizant of the fact that in the ordinary case the occasion for [the indemnitee] seeking in-

demnity would not arise unless it had itself been guilty of some fault, for otherwise no judgment could be recovered against it.

*Beachboard v. Railway Co., supra,* at 679, 193 S.E. 2d at 583; *accord, Gibbs v. Light Co., supra; Hargrove v. Plumbing and Heating Service,* 31 N.C. App. 1, 228 S.E. 2d 461 (1976). We hold that the language of paragraph 11 does require King-Hunter to indemnify Owsley for liability incurred by Owsley for injuries sustained by third persons "arising from the use of, transportation of, or in any way connected with" the leased crane, "from whatsoever cause arising," including the negligence of Owsley or of one of its employees for whose acts it is derivatively liable.

[3]  Finally, King-Hunter contends that even if the indemnity agreement contained in paragraph 11 can properly be construed to protect Owsley against the consequences of its own or its employee's negligence in general, it should not be applicable under the peculiar circumstances of this case. In this connection, King-Hunter asserts that Russell, Owsley's technician, was supposed only to give technical advice during the dismantling of the crane and was not to actively operate it, and that King-Hunter was given no notice that the technician claimed the right or would undertake personally to operate the crane. King-Hunter contends that it was not contemplated by the parties that the indemnity provision should be applicable to make King-Hunter liable for the consequences of the completely unforeseeable intervention of a technician whose qualifications it did not know. This contention ignores the facts that paragraph 16 of the equipment rental contract expressly provides that dismantling the crane is the responsibility of King-Hunter, that King-Hunter chose to delegate this responsibility to Carolina Crane and Rigging Corporation, and that, although no King-Hunter employee was present when the fatal accident occurred, the foreman and employees of Carolina were then present and were actively participating with Russell in the dismantling process. Therefore, even if Russell exceeded the limits of the functions he was supposed to perform as the technician furnished by Owsley, a matter which is far from clear and which we do not decide, we perceive no legitimate reason on that score for releasing King-Hunter from its obligation to indemnify Owsley as provided in paragraph 11 of the contract. Delegating its responsibility under paragraph 16 and

removing its own employees from the scene would not have that effect. Nor, as we have already noted, would negligence on the part of Russell, if any should be proved, render the indemnity agreement inoperable in this case.

On King-Hunter's appeal we find no error in the summary judgment entered in favor of Owsley.

### CROSS APPEAL OF H. B. OWSLEY & SON, INC.

[4] In the judgment appealed from the court directed that Owsley shall have and recover of King-Hunter "indemnity in full for any amount the plaintiff Elizabeth B. Cooper, Administratrix of the Estate of Gary Wayne Cooper, Deceased, is adjudged entitled to recover of the defendant H. B. Owsley & Son, Inc., in this action." In its cross appeal, Owsley contends that the court erred in failing to go further and order that Owsley is entitled to be indemnified by King-Hunter for attorney fees and other expenses incurred by Owsley in connection with the defense of this action. We do not agree. Although broadly written, the indemnity agreement in paragraph 11 does not, in our opinion, extend so far as to cover attorney fees and other expenses incurred by Owsley in the defense of this action.

The judgment appealed from is

Affirmed.

Judges CLARK and ERWIN concur.