BRIAN K. WELLMON v. HICKORY CONSTRUCTION CO., INC.

No. 8718SC137

(Filed 15 December 1987)

**Negligence § 57.11— explosion caused by welder's torch—failure to warn of flammable material—insufficient evidence of negligence**

In an action to recover damages for injuries sustained by plaintiff steel erector when a barrel of concrete sealant below him was ignited by his welding torch and exploded, plaintiff's evidence was insufficient for the jury to find that defendant general contractor was negligent in failing to warn plaintiff of the danger created by placing the barrel of flammable concrete sealant in an area directly under a place where it knew welders would be working where it tended to show that plaintiff was employed by a steel erection subcontractor and thus was an invitee; the barrel of sealant had been in the middle of the building for two to three weeks for the convenience of concrete finishers and was clearly marked as flammable; plaintiff's foreman had seen the barrel in such location for four days; the barrel was out in the open and in plain view for plaintiff to see; and plaintiff failed to check the area for flammables before he began welding.

APPEAL by plaintiff from *Walker, Judge.* Judgment entered 21 October 1986 in Superior Court, GUILFORD County. Heard in the Court of Appeals 1 September 1987.

Plaintiff seeks to recover damages for personal injuries sustained when a barrel of concrete sealant below him was ignited by fire from his welding and exploded.

Plaintiff's evidence tended to show that, on 29 August 1986, plaintiff, Brian Wellmon was working as a steel erector for J & J Steel Erector's, Inc. (hereinafter J & J) at the construction site of a square one-story building in High Point, North Carolina. J & J was a subcontractor for the prime contractor, defendant, Hickory Construction Company (hereinafter Hickory).

Plaintiff spent the entire morning at the construction site bolting up and tightening bolts. The building under construction was in its early stages. There were no walls or roof. After returning from lunch, plaintiff's foreman, Forest Hildebrand, instructed plaintiff to begin welding in the bridging. This assignment would require him to run the entire length of the building over the floor.

Concrete finishers, who had been pouring and finishing the floor for approximately two to three weeks, were also working at the time of this incident. Hickory supplied the concrete finishers with a fifty-five gallon barrel of sealant to use in finishing the floor. This sealant was made of highly flammable material, and the barrel label clearly contained such a warning. This barrel was placed in the middle of the building for the concrete finishers' convenience.

Plaintiff started at one corner of the building and used a ladder to get up in the bays to begin welding. Plaintiff, who had been welding for one to two hours, was in his third bay, when he came close to the area where men were pouring concrete. Plaintiff informed the concrete men "it was going to get hot" where he was welding for their protection. Plaintiff testified that if you "cut a piece" when welding, a ball of fire can drop and roll around on the floor. Plaintiff was on his third run, and was sitting down on a bar joist welding in the bridging, when apparently fire from his welding ignited the barrel of concrete sealant below him and exploded. Plaintiff sustained first and second degree burns to his arms, right leg and face.

Plaintiff testified that he did not check the floor and area where he was going to weld; that he did not observe or know that the barrel of flammable sealant was below him before he began to weld; that he didn't check to see if any gas cans were underneath him and that he knew concrete finishers were pouring and finishing concrete at the time he went up to weld.

Plaintiff's foreman, Forest Hildebrand, testified as follows: that he has been in the steel erecting business since 1947; that concrete work is normally performed after steel is erected, but a "rush" job at the site required concrete work and steel erection to be performed simultaneously; that welders customarily look around them to see if there is a gas can or flammables nearby before welding; that he did not know the barrel contained flammables until after the explosion; that he had seen the barrel on location for four days prior to the explosion; that during his years in steel business he had never observed a drum in a building while steel erection was going on; that he would not have allowed welding if he had known the barrel contained flammables; and that he did not know if Hickory's superintendent knew if J & J was to begin welding the day of the explosion.

Jimmy Coffey, the concrete finisher subcontractor, testified to the following: that the barrel of sealant had been in the middle of the building for two to three weeks; that it is customary for sealant to be placed in close proximity to concrete finishing operations, and the barrel was placed in the middle of the building for their convenience; that he knew sealant was flammable; and that Hickory's superintendent checked the job site daily.

Mr. Clontz, Hickory Construction's superintendent, testified to the following: that Hickory was in general charge of safety on the job; that the responsibility for safety was mainly the workers'; that he was on the job each day, and when he was not there, someone was in charge; that one of his responsibilities was to make sure combustibles were not inside the building; that the barrel of sealant should not have been where it was, in terms of custom of safety; that he knew where the drum was, where its warning label appeared and that it should be kept away from flames; that he knew they were bolting up steel, but did not know they were welding, but did know, that after bolting, they would weld; that the drum was not "inside" the building because it had

no walls or roof; and that Mr. Hyde, who stands in as a replacement superintendent, was present when the welding began.

Defendant's motion for directed verdict made at close of plaintiff's evidence was denied. Defendant offered no evidence at trial. At the close of all the evidence, defendant renewed its motion for directed verdict, which motion the trial court allowed upon the grounds that, (1) the evidence failed to establish actionable negligence on the part of the defendant and (2) the evidence showed contributory negligence as a matter of law. Plaintiff appeals.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Michael K. Curtis, for plaintiff appellant.*

*Smith Helms Mulliss & Moore, by J. Donald Cowan, Jr. and Diane S. Peake, for defendant appellee.*

JOHNSON, Judge.

The issues on this appeal concern (1) the granting of defendant's motion for directed verdict made on the grounds of insufficient evidence of negligence; (2) the granting of defendant's motion for directed verdict on the grounds of plaintiff's contributory negligence; and (3) the denial of plaintiff's motion to submit the issue of wilful and wanton negligence to the jury. For the following reasons, we conclude it was not error to grant defendant, Hickory Construction's motion for a directed verdict.

The first issue is whether the court erred in granting defendant's motion for directed verdict based on insufficient evidence of negligence.

A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. On such a motion, the nonmoving party's evidence must be taken as true and considered in the light most favorable to the plaintiff, giving plaintiff the benefit of every reasonable inference to be drawn therefrom. A directed verdict for the defendant is not properly allowed unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977); *Everhart v.*

*LeBrun*, 52 N.C. App. 139, 277 S.E. 2d 816 (1981). If, when so viewed, the evidence is such that reasonable minds could differ as to whether the plaintiff is entitled to recover, a directed verdict should not be granted and the case should go to the jury. *State Auto. Mutual Insurance Co. v. Smith Dry Cleaners, Inc.*, 285 N.C. 583, 206 S.E. 2d 210 (1974).

Defendant, as general contractor, subcontracted with plaintiff's employer for steel erection. Plaintiff, as employee of a subcontractor working on the building, was an invitee of defendant. *Southern Railway Co. v. A.D.M. Milling Co.*, 58 N.C. App. 667, 294 S.E. 2d 750 (1982); *Cowan v. Laughridge Construction Co.*, 57 N.C. App. 321, 291 S.E. 2d 287 (1982).

The duty defendant owed to the plaintiff is aptly described in *Deaton v. Board of Trustees of Elon College*, 226 N.C. 433, 438, 38 S.E. 2d 561, 564-65 (1946).

> [I]t is generally held that one who is having work done on his premises by an independent contractor is under the obligation to exercise ordinary care to furnish reasonable protection against the consequences of *hidden dangers* known, or which ought to be known, to the proprietor and not to the contractor or his servants. (Citation omitted) (Emphasis added).

> The rule applies *only to latent dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known.* (Citations omitted) (Emphasis added).

> The owner is not responsible to an independent contractor for injuries from defects or dangers of which the contractor knew or should have known, 'but if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury.' (Citations omitted).

*Deaton, citing, Douglass v. Peck & L. Co.*, 89 Conn. 622, 629, 95 A. 22, 25 (1915). Furthermore, "defendant [is] under no duty to warn plaintiff, as an invitee, of an obvious condition or of a condition of which the plaintiff [has] equal or superior knowledge." *Wrenn v.*

*Hillcrest Convalescent Home, Inc.*, 270 N.C. 447, 448, 154 S.E. 2d 483, 484 (1967).

Plaintiff contends defendant was negligent in failing to warn him of the danger created by placing the barrel of concrete sealant, which defendant knew to be flammable or explosive, in an area directly under a place where it knew welders would be operating. We disagree.

The evidence revealed that the barrel of sealant had been in the middle of the building for two to three weeks. The building was in its early stages and had no walls or roof. This sealant was made of highly flammable material, the barrel label contained such a warning, and plaintiff's foreman had observed the barrel on location for four days prior to the explosion.

The evidence further revealed that the custom for welders is to check around for flammables prior to commencing any type of welding. Plaintiff testified he did not inspect the area for flammables before beginning his welding, nor did he inspect during his welding. The evidence also reveals that the barrel was properly labeled and was out in the open, in plain view for plaintiff to see. Since the barrel was in plain view and clearly marked, it was obvious, and its obvious existence required plaintiff to inspect the barrel to ascertain its contents.

Plaintiff relies upon *Diamond v. McDonald Service Stores*, as dispositive in the case *sub judice*. 211 N.C. 632, 191 S.E. 358 (1937). We find it distinguishable.

In *Diamond*, the defendant, operator of a gasoline filling station, engaged an independent contractor to cut some metal upon the premises with an acetylene torch. The plaintiff, a welder, and employee of the independent contractor, examined the area around the work to make sure that no flammable material was located within range of fire from the torch, and finding nothing dangerous, began work. Located about four feet from the point at which plaintiff was using the torch was a barrel of alcohol. On the barrel, in large letters, appeared the words "Firestone Super-pyro Anti-Freeze." Despite having examined the area, plaintiff testified he never saw the can of alcohol that exploded; nor did he know the can was in the pit. The flame from the torch soon came into contact with the barrel of alcohol, and in the ensuing explosion and fire, the plaintiff sustained serious burns.

Reversing a nonsuit, the Supreme Court held that it was for the jury to determine (1) whether the defendant should have warned plaintiff of the presence of the nearby barrel of alcohol, and (2) whether the plaintiff was contributorily negligent.

In the case *sub judice*, there is no evidence from which the jury could reasonably infer that the barrel of sealant was a latent or hidden danger. In *Diamond*, there was a question as to the location of the barrel, creating the issue of a hidden danger, whereas in the case *sub judice*, there is no question as to the location of the barrel or its contents. The barrel was clearly marked and sitting out in the open to be seen by those who but merely looked. "[T]he law is unable to protect those who have eyes and will not see." *Hargrove v. Plumbing and Heating Service of Greensboro, Inc.*, 31 N.C. App. 1, 5, 228 S.E. 2d 461, 464, *cert. denied*, 291 N.C. 448, 230 S.E. 2d 765 (1976).

Plaintiff further contends that even if the barrel was obvious, it would still be a jury question as to whether Hickory fulfilled its duty. We disagree. Plaintiff's foreman had seen the barrel for four days, both plaintiff and his foreman knew this project was a rush job and that the concrete finishers were still working. Under these circumstances defendant had no further duty.

Having determined that the directed verdict on the issue of negligence was proper, we find it unnecessary to review plaintiff's remaining assignments of error.

We conclude, therefore, that the decision of the trial court is

Affirmed.

Judges BECTON and PARKER concur.