IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1286

Filed: 17 May 2016

Cumberland County, No. 14 CVS 1826

CSX TRANSPORTATION, INC., Plaintiff,

v.

CITY OF FAYETTEVILLE and PUBLIC WORKS COMMISSION OF THE CITY OF FAYETTEVILLE, a/k/a FAYETTEVILLE PUBLIC WORKS COMMISSION, Defendants.

CITY OF FAYETTEVILLE, Third-Party Plaintiff,

v.

TIME WARNER CABLE SOUTHEAST, LLC, Third-Party Defendant.

Appeal by plaintiff from order entered 28 May 2015 by Judge Tanya T. Wallace and order entered 8 June 2015 by Judge Beecher R. Gray in Cumberland County Superior Court. Heard in the Court of Appeals 27 April 2016.

> *Millberg Gordon Stewart PLLC, by Frank J. Gordon and B. Tyler Brooks, for plaintiff-appellant.*

> *Hutchens Law Firm, by J. Scott Flowers and Natasha M. Barone, for defendants-appellees.*

TYSON, Judge.

CSX Transportation, Inc. ("CSX") appeals from order granting summary judgment in favor of defendants City of Fayetteville and the Public Works

Commission ("PWC") on whether the parties' contractual agreement required PWC to indemnify CSX for its own negligence, and denying CSX's motion for partial summary judgment on its contractual indemnity claim. CSX also appeals from order granting summary judgment in favor of PWC on CSX's claim for indemnification. We reverse the trial court's order granting summary judgment in favor of PWC, grant CSX's motion for partial summary judgment on its contractual indemnity claim, and remand.

## I. Factual Background

In 1951, PWC entered into a contract ("the Crossings Agreement") with Atlantic Coast Line, CSX's predecessor-in-interest, which allowed PWC, as licensee, to install aerial power lines over a section of railroad tracks. The Crossings Agreement includes an indemnification provision, which states:

> The Licensee will indemnify and save harmless the Railroad Company, its successors and assigns, from and against all loss, cost, damage and expense, and from and against any and all claims or demands therefor, on account of injury to person or property, which may be incurred by the Railroad Company by reason of the construction, maintenance, use or operation of the said conductors, wires or supports, or by reason of the exercise of any of the privileges conferred by this license or agreement.

It is not disputed that CSX, as successor-in-interest to the Atlantic Coast Line, has the right to enforce the 1951 agreement.

The Crossings Agreement requires all power lines installed by PWC to be maintained at an elevation of at least twenty-seven or twenty-eight feet above the top

of the railroad tracks, depending on the line's voltage. Pursuant to the Crossings Agreement, PWC installed utility poles on both sides of the railroad tracks running adjacent to 3024 Clinton Road, in Fayetteville, North Carolina, and connected two aerial lines between these poles.

On 14 March 2011, CSX employee Donald Herring ("Mr. Herring") was operating a crane on the railroad tracks and struck one or more of the power lines crossing over the tracks. By the time Mr. Herring realized his crane would not pass under the power lines, it was too late for him to stop.

The parties' briefs present conflicting evidence of whether the height of PWC's lines complied with the elevation requirements contained in the Crossings Agreement. A CSX investigation concluded PWC's lines were hanging lower than required by the Crossings Agreement. CSX alleged in its complaint the power lines were hung no higher than eighteen feet, seven inches.

Conversely, PWC's engineer measured one of the power lines as twenty-seven feet, seven inches above the tracks. PWC also hired an independent electrical engineer who opined that the height of the power lines was in compliance with the Crossings Agreement.

The collision caused a power surge of electrical current into equipment owned by a third party, CenturyLink, through a "common ground" which connected PWC's and CenturyLink's lines. The power surge caused extensive damage to CenturyLink's

equipment, including underground wiring and an above-ground utility pedestal. CenturyLink repaired its property and issued demands on CSX to pay for damages to CenturyLink's property purportedly caused by the power surge. CSX settled the CenturyLink claim by paying $118,000.00 in March 2013.

After CSX compensated CenturyLink, it sought indemnification from PWC pursuant to the indemnification provision within the Crossings Agreement. PWC denied CSX's claim for indemnification. On 11 March 2014, CSX filed a complaint against PWC, and alleged claims for: (1) breach of contract/contractual indemnity; (2) negligence/gross negligence; (3) common law indemnity; (4) trespass; (5) private nuisance; and, (6) contribution. PWC responded by filing an answer, a counterclaim, and a third-party complaint against Time Warner Cable Southeast, LLC ("Time Warner").

In April 2015, PWC and Time Warner filed motions for summary judgment, and CSX filed a motion for partial summary judgment. The parties' motions were heard on 7 May and 12 May 2015 before the Honorable Tanya T. Wallace. The trial court granted Time Warner's motion for summary judgment and dismissed it from the case. No party appealed from this ruling and order. The parties stipulate Time Warner is not a party to this appeal.

On 28 May 2015, Judge Wallace entered a written order granting in part and denying in part CSX's motion for partial summary judgment. Judge Wallace

concluded a genuine issue of material fact existed with regard to CSX's claim for indemnification, and denied CSX's motion for summary judgment on this issue. Judge Wallace granted CSX's motion for summary judgment on PWC's counterclaim, and dismissed the counterclaim with prejudice.

That same day, Judge Wallace also entered a written order, which granted in part and denied in part PWC's motion for summary judgment. Judge Wallace ruled as follows:

> 1. [PWC's] Motion for Summary Judgment as to [CSX's] first claim for relief, Count One: Indemnification, is denied.
>
> 2. The Crossing[s] Agreement does not require [PWC] to indemnify [CSX] for the negligence of [CSX] or its employees. This issue is resolved as a matter of law.
>
> 3. [PWC's] Motion for Summary Judgment as to all of [CSX's] remaining claims for relief is granted. [CSX's] claims for relief designated as Count Two: Negligence/Gross Negligence; Count Three: Common Law Indemnity; Count Four: Trespass; Count Five: Private Nuisance; and Count Six: Contribution are hereby dismissed with prejudice.

Judge Wallace denied PWC's motion for summary judgment on CSX's claim for indemnification after she determined a genuine issue of material fact existed with regard to CSX's negligence.

On 18 May 2015, the day trial was scheduled to begin before the Honorable Beecher Gray, CSX filed an admission of negligence. In light of CSX's admission of

negligence, PWC orally renewed its motion for summary judgment on CSX's claim for indemnification that same day.

Judge Gray granted PWC's renewed motion for summary judgment based upon Judge Wallace's prior order, which had concluded as a matter of law PWC was not required to indemnify CSX for CSX's own negligence. This order was entered on 8 June 2015. CSX gave timely notice of appeal to this Court.

## II. Issue

CSX argues the trial court erred by granting summary judgment in favor of PWC. CSX contends the trial court incorrectly concluded that North Carolina law does not allow a party to be indemnified for its own negligence.

## III. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015); *see Draughon v. Harnett Cnty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (citation omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004).

"In a motion for summary judgment, the evidence presented to the trial court must be . . . viewed in a light most favorable to the non-moving party." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 467, 597 S.E.2d 674, 692 (2004) (citations omitted).

> An issue is "genuine" if it can be proven by substantial evidence and a fact is "material" if it would constitute or irrevocably establish any material element of a claim or a defense.
>
> A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim. Generally this means that on undisputed aspects of the opposing evidential forecast, where there is no genuine issue of fact, the moving party is entitled to judgment as a matter of law. If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so.

*Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations and internal quotation marks omitted). This Court reviews a trial court's summary judgment order *de novo. Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

## IV. Analysis

### A. Indemnification

Both parties stipulated during oral argument that North Carolina law permits a party to be indemnified for its own negligence, but disagree on the application of this principle to the facts here.

CSX argues: (1) that portion of Judge Wallace's 28 May 2015 order, which granted summary judgment in favor of PWC as a matter of law on the issue of

whether the Crossings Agreement required PWC to indemnify CSX for its own negligence; and, (2) Judge Gray's subsequent order, which granted summary judgment in favor of PWC on CSX's claim for indemnification are based upon a misapprehension of North Carolina indemnity law. We agree.

In its 28 May 2015 order, the trial court stated:

> The Court further finds that, with regard to the issue of whether the indemnification agreement contained in the subject contract between the Parties . . . requires [PWC] to indemnify [CSX] for the negligence of [CSX] or [CSX]'s employees, there is no genuine issue of material fact and [PWC is] entitled to judgment as a matter of law.
>
> . . . .
>
> 2. The Crossing[s] Agreement does not require [PWC] to indemnify [CSX] for the negligence of [CSX] or its employees. This issue is resolved as a matter of law.

North Carolina courts have long upheld the validity and enforcement of indemnification provisions in contracts, whereby one party is required to reimburse another for claims paid to a third party. Our Supreme Court explained the purpose of indemnity provisions, and our courts' role in interpreting these provisions, as follows:

> An indemnity contract obligates the indemnitor to reimburse his indemnitee for loss suffered or to save him harmless from liability. Our primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply. The court must construe the contract as a whole and an indemnity provision must be appraised in relation to all other provisions.

*Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008) (citations and internal quotation marks omitted).

Our Supreme Court has expressly recognized the right of a party to contractually provide for indemnification against its own negligence. *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965). The Court emphasized "[f]reedom of contract is a fundamental basic right" and held an indemnity clause which would allow defendant-company to be indemnified for its own negligence was valid and enforceable. The Court reasoned "[i]f the indemnity clause does not provide defendant indemnity against claims of the character of plaintiff's claim, it has no meaning or purpose. The indemnity applies to claims based on defendant's negligence for there is no other class of claims for which defendant would be responsible to [third-party's] employees[.]" *Id.* at 466, 144 S.E.2d at 399 (distinguishing exculpatory contracts, "whereby one seeks to wholly exempt himself from liability for the consequences of his negligent acts, and contracts of indemnity against liability imposed for the consequences of his negligent acts[]").

This Court also unequivocally recognized the right of contracting parties to provide for indemnification for one's own negligence. *Cooper v. H.B. Owsley & Son, Inc.*, 43 N.C. App. 261, 266-67, 258 S.E.2d 842, 846 (1979) (holding general contractor was required to indemnify crane owner for crane owner's own negligence pursuant to indemnification provision in contract); *Beachboard v. S. Ry. Co.*, 16 N.C. App. 671,

679, 193 S.E.2d 577, 582-83 (1972) (holding language of indemnity provision in contract obligated paper company to indemnify railroad where both railroad and paper company were found to have been negligent), *cert. denied*, 283 N.C. 106, 194 S.E.2d 633 (1973).

In *Beachboard*, a railroad employee was injured while working in a paper company's rail yard and sued his employer, the railroad, for his on-the-job injury. The railroad sought indemnification from the paper company pursuant to a contractual indemnification provision. The paper company contended the indemnification provision in its contract with the railroad was solely limited to instances in which the paper company was negligent, and because the railroad had "also been found guilty of negligence in this case, [the paper company] ha[d] no obligation to indemnify it." *Id.* at 679, 193 S.E.2d at 582. We expressly rejected the paper company's argument because "[t]o adopt [the paper company's] interpretation effectively robs the indemnity clause of nearly all meaning." *Id.*

In *Cooper*, this Court analogized indemnification provisions to liability insurance policies, which "have long been enforced by the courts." *Cooper*, 43 N.C. App. at 266, 258 S.E.2d at 846. Rejecting the defendant's argument that it would be against public policy to permit the plaintiff to be indemnified against its own negligence, we noted "it is now the prevailing rule that a contract may validly provide for the indemnification of one against, or relieve him from liability for, his own future

acts of negligence[.]" *Id.* at 267, 258 S.E.2d at 846 ("[Defendant] contends that it is against public policy to permit [plaintiff] to be indemnified against its own negligence or against that of its employee for which it is responsible. We perceive, however, no sound reason why this must be so.").

More recently, this Court, citing *Cooper*, explicitly rejected the notion that North Carolina does not permit the contractual indemnification of a party for its own negligent acts. *Malone v. Barnette*, __ N.C. App. __, __, 772 S.E.2d 256, 260-61 (2015). In *Malone*, this Court observed:

> This Court has expressly held that North Carolina public policy is not violated by an indemnity contract that provides for the indemnification of a party against the consequences of its own negligent conduct, particularly when the agreement is made "at arms [sic] length and without the exercise of superior bargaining power." *Cooper v. H.B. Owsley & Son, Inc.*, 43 N.C. App. 261, 267, 258 S.E.2d 842, 846 (1979). We further noted that the enforcement of such provisions "would have no greater tendency to promote carelessness on the part of the indemnitee than would enforcement against the insurer of a policy of liability insurance" and recognized that "the occasion for the indemnitee seeking indemnity would not arise unless it had itself been guilty of some fault, for otherwise no judgment could be recovered against it." *Id.* at 266-68, 258 S.E.2d at 846 (citation and brackets omitted).

*Malone*, __ N.C. App. at __, 772 S.E.2d at 260 (footnote omitted); *see also Kirkpatrick & Assocs., Inc. v. Wickes Corp.*, 53 N.C. App. 306, 310, 280 S.E.2d 632, 635 (1981) (citation omitted) (holding plaintiff's admission of negligence did not bar its claim for recovery based upon indemnity clause because "[d]efendant's ultimate liability to

plaintiff is in contract, not in tort[]"); *Hargrove v. Plumbing and Heating Serv. of Greensboro, Inc.*, 31 N.C. App. 1, 7, 228 S.E.2d 461, 465 (holding that indemnification provision provided for full indemnity for all negligence, including any negligence on the part of the indemnitee), *disc. review denied*, 291 N.C. 448, 230 S.E.2d 765 (1976).

Here, the trial court granted summary judgment in favor of PWC on the grounds that CSX had admitted its negligence in causing or contributing to the incident, which gave rise to CenturyLink's claim, and this admission barred CSX from receiving indemnification from PWC as a matter of law. As discussed *supra*, this conclusion is contrary to well-established North Carolina law. The trial court's conclusion of law was incorrect and summary judgment entered upon this erroneous conclusion was improper. The trial court's 8 June 2015 order, which granted summary judgment in favor of PWC as a result of CSX's admitted negligence, is reversed.

### B. Enforceability of the Indemnity Provision

Both parties also stipulated at oral argument that the language of the indemnity provision in the Crossings Agreement is not ambiguous and should be interpreted by this Court as a matter of law. CSX contends the second phrase in the indemnification provision, which requires indemnification where the injury is "by reason of the exercise of any of the privileges conferred by this license or agreement[,]" mandates indemnification for the situation at bar. CSX reasons the only "privilege[]

conferred" by the agreement was to allow PWC to place power lines over the railroad tracks. CSX argues if not for, or "but for," the presence of the power lines above the railroad tracks, which exist only as a result of PWC's exercise of its privilege under the license granted, CSX's crane would not have hit PWC's power lines and damaged CenturyLink's equipment.

"A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *Schenkel & Shultz*, 362 N.C. at 273, 658 S.E.2d at 921.

> As in the construction of any contract, the court's primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply. It will be construed to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties, but it cannot be extended to cover any losses which are neither expressly within its terms nor of such character that it can reasonably be inferred that they were intended to be within the contract.

*Dixie Container Corp. v. Dale*, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968) (citations and internal quotation marks omitted).

The language in the Crossings Agreement provides for indemnification for damage "which may be incurred by the Railroad Company *by reason of* the construction, maintenance, use or operation of the said conductors, wires or supports, or *by reason of* the exercise of any of the privileges conferred by this license or agreement." (emphasis supplied).

PWC forcefully argues "by reason of" does not mean "but for," and is more akin to a proximate causation requirement. PWC asserts it is only required to indemnify CSX for injuries incurred "by reason of," or caused by, the construction, maintenance, use, or operation of PWC's equipment. We disagree with this narrow interpretation. *See One Beacon Ins. Co. v. United Mech. Corp.*, 207 N.C. App. 483, 488, 700 S.E.2d 121, 124-25 (2010) (interpreting "arising from or relating to, and by reason of" language in indemnity provision as synonymous with "stemm[ing] from"). If this Court were to accept PWC's interpretation of the indemnification provision, it would "effectively rob[] the indemnity clause of nearly all meaning." *Beachboard*, 16 N.C. App. at 679, 193 S.E.2d at 582.

Moreover, there is a want of authority to support PWC's assertion that "by reason of" is synonymous with "caused by" or "proximately caused by." Although "by reason of" has never expressly been defined by North Carolina's appellate courts, the United States Court of Appeals for the First Circuit interpreted the phrase "by reason of" in an indemnification provision and held: "[W]e consider the language unambiguous: 'by reason of' means 'because of,' and thus necessitates an analysis at least approximating a 'but-for' causation test." *Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 589 (1st Cir. 2004) (citing Black's Law Dictionary 201 (6th ed. 1990); *see also* Webster's Third New Int'l Dictionary 307 (1993) (defining "by virtue of" to mean "by reason of").

The Crossings Agreement was an arm's length, bargained-for exchange between two equally sophisticated parties. The language in the indemnification provision, which both parties concede is unambiguous, was granted as consideration for, and as a result of, PWC's power lines being installed and maintained over CSX's railroad tracks. This provision allows CSX to be indemnified for damages paid to CenturyLink, because the damage was "by reason of," or "by virtue of," PWC's exercise of its privilege, *i.e.* hanging power lines above the railroad tracks.

In other words, but-for, or "stemm[ing] from," PWC's exercise of its privilege and license pursuant to the Crossings Agreement, CenturyLink's equipment would not have been damaged as a result of CSX's crane colliding with PWC's power lines. *See One Beacon Ins. Co.*, 207 N.C. App. at 488, 700 S.E.2d at 124-25. Under the agreement, CSX is entitled to indemnification from PWC, even though damages resulted from CSX's own negligence. On *de novo* review, CSX's motion for partial summary judgment on its claim for contractual indemnity is granted.

## V. Conclusion

The trial court erroneously concluded CSX was barred from recovering indemnification from PWC because of CSX's admission of negligence in the harm caused to CenturyLink.

That portion of Judge Wallace's order entered 28 May 2015, which: (1) granted summary judgment in favor of PWC on whether the Crossings Agreement required

PWC to indemnify CSX for its own negligence as a matter of law; and, (2) denied CSX's motion for partial summary judgment on its contractual indemnity claim is reversed. Upon *de novo* review, CSX's motion for partial summary judgment on its contractual indemnity claim is granted.

Judge Gray's order entered 8 June 2015, following CSX's admission of negligence, which granted summary judgment in favor of PWC as to CSX's claim for indemnification is reversed. This cause is remanded to the trial court for further proceedings and entry of judgment consistent with this opinion.

REVERSED AND REMANDED.

Judges CALABRIA and HUNTER, JR. concur.