FOREST BEACHBOARD, PLAINTIFF v. SOUTHERN RAILWAY COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLEE v. U. S. PLYWOOD-CHAMPION PAPERS, INC., THIRD-PARTY DEFENDANT-APPELLANT

No. 7228SC56

(Filed 20 December 1972)

1. Corporations § 11— contract executed prior to corporate existence — ratification by corporation

By accepting the benefits of a contract executed by its president prior to its corporate existence, a corporation became bound to perform the obligations incident to such a contract.

2. Corporations § 25— liability of corporation for contract of predecessor

A contract entered in 1905 between a railroad and a fiber company is binding upon the third-party defendant where the fiber company in 1936 conveyed all of its assets to its parent corporation in complete cancellation or redemption of all of its outstanding shares, the surviving parent corporation entered a written agreement with the railroad in which it expressly agreed that it would be bound by the 1905 contract, a supplemental agreement executed by the parent corporation and the railroad in 1959 expressly recognized the 1905 contract as continuing in effect, and the parent corporation changed its name in 1961 and merged with another corporation in 1967 to become the corporate entity which appears in the present action as the third-party defendant.

3. Indemnity § 2— indemnity against "all damage" — injuries to persons and property

A covenant to indemnify a railroad against "any and all damage" resulting from the negligence of a corporation includes injuries to persons as well as injuries to property.

4. Indemnity § 2— indemnity against negligence of corporation — concurring negligence

A corporation's covenant to indemnify a railroad against "any and all damage resulting from the negligence" of the corporation obligates the corporation to indemnify the railroad not only when the damage is caused by the sole negligence of the corporation, but also when it results from the negligence of both the railroad and the corporation.

5. Indemnity § 2— indemnity clause protecting railroad — validity — public policy

An indemnity provision protecting a railroad from the consequences of its own negligence was not void as against public policy where it was in no way connected with the railroad's public service but was included in a contract in which the railroad obligated itself to perform acts and render services in connection with a corporation's privately owned tracks.

6. Indemnity § 3— action to enforce indemnity clause — allegations and proof of performance by plaintiff unnecessary

In a railroad's third-party action against a paper company to recover under an indemnity provision in a contract, the railroad was not required to allege and prove full performance of the contract on its part where the contract contained no express or implied condition precedent to make the indemnity clause therein operative, it being incumbent upon the paper company to allege and prove any asserted failure of performance by the railroad which would relieve it of its indemnity obligation.

7. Indemnity § 3; Master and Servant § 40— injury to railroad employee — railroad's action on indemnity contract — contributory negligence of employee not in issue

In a railroad's third-party action against a paper company to recover under an indemnity agreement an amount recovered by plaintiff railroad employee in an F.E.L.A. action against the railroad, the trial court properly refused to submit to the jury an issue as to plaintiff employee's contributory negligence since the contributory negligence of plaintiff, if any existed, was not a defense to the railroad's contract action against the paper company to enforce the indemnity agreement.

8. Contracts § 26; Indemnity § 3— indemnity contract — prior negotiations

In an action to enforce an indemnity contract, the trial court properly excluded a written "Memorandum of Understanding" used as a basis for the formal contract, since it is clear that the formal indemnity contract was intended by the parties to supersede all prior agreements.

9. Indemnity § 3; Trial § 11— jury argument — legal effect of indemnity contract

In an action to enforce an indemnity contract, the trial court properly refused to permit defendant's counsel to argue to the jury the legal effect of the indemnity contract between the parties.

APPEAL by third-party defendant from *Ervin, Judge,* 10 May 1971 Session of Superior Court held in BUNCOMBE County.

Plaintiff, an employee of Southern Railway Company (Southern), instituted this action on 13 December 1968 against Southern under the Federal Employers' Liability Act to recover damages for personal injuries sustained by him on 28 January 1967 when he was hit by a railway car, the wheels of which ran over and amputated both of his legs, while he was engaged in performance of his duties at the railroad yard owned by U. S. Plywood-Champion Papers, Inc. (Champion) in Haywood County, N. C. Plaintiff alleged that the yard was an unsafe place to work, that even though his employer knew or should have known this it had negligently ordered him to work there, and that Southern's negligence in this and in other specifically alleged respects proximately caused his injuries. Southern answered and denied negligence on its part, alleged that plaintiff's injuries were solely the result of the active negligence of Champion, and filed third-party complaint against Champion in which Southern sought to be indemnified by Champion for any amount which plaintiff might recover of Southern in this action. Southern alleged that it was entitled to be so indemnified by virtue of the provisions of former G.S. 1B-8 and by reason of a written contract dated 8 November 1905 entered into between Southern and Champion Fibre Company (Fibre Company), a predecessor of Champion. Southern alleged that by subsequent conveyances, agreements, and corporate mergers, Champion, the present third-party defendant, had succeeded to all of the rights, duties and obligations of Fibre Company under said contract. A copy of this contract, under which the industrial tracks and private railroad yard of Champion were constructed, was attached to Southern's third-party complaint against Champion, and contains the following provisions which were expressly pleaded by Southern:

"AND the FIBRE COMPANY hereby covenants and agrees in consideration of the advantage to be by it derived from the operation of said tracks:

"3. That it will pay unto the Southern Company, in cash, upon bills rendered therefor by the Southern Company, from time to time hereafter, as the said tracks are completed, whatever sum may be the entire actual cost to the Southern Company of the cross and switch ties, rails, fastenings and other track materials which may be neces-

sary for the construction of said tracks so far as they extend off the present right of way of the Southern Company; whereupon the said cross and switch ties, rails, fastenings and other track materials so paid for by the Fibre Company shall become and remain the property and under the control of the Fibre Company.

\* \* \* \* \*

"5. That it will indemnify and save harmless the Southern Company against any and all damage resulting from the negligence of the Fibre Company, its servants and employees; . . . . "

Southern alleged that it had advised Champion Papers, Inc., predecessor of third-party defendant, of the institution of the present action and made demand upon it to assume complete responsibility therefor, but that third-party defendant and its predecessors had refused to comply with said indemnity agreement and had declined to assume responsibility for defense of plaintiff's claim.

Champion answered Southern's third-party complaint, admitted that Southern had called upon it to defend and that it had refused to defend against plaintiff's claim against Southern, and filed a cross action to recover from Southern $97,500.00 which Champion had previously paid plaintiff in exchange for plaintiff's covenant not to sue Champion.

The court ordered the issues arising between plaintiff and Southern severed for trial from the issues arising between Southern and Champion. Upon trial of the issues between plaintiff and Southern, held at the 29 March 1971 session of Superior Court in Buncombe County, the jury returned verdict that plaintiff was injured through the negligence of Southern as alleged in the complaint and awarded plaintiff damages in the sum of $1,000,000.00. Southern moved to set the verdict aside. By agreement of counsel the court reserved ruling on this motion until after trial of the issues between Southern and Champion. The case came on for trial upon the issues between Southern and Champion at the 10 May 1971 session of Superior Court held in Buncombe County. During the course of trial of these issues, all parties joined in a consent judgment dated 11 May 1971 under which it was adjudged that plaintiff should recover of Southern $347,500.00 in full satisfaction of all of his claims, said amount to be credited with $97,500.00 theretofore

paid plaintiff by Champion, thereby reducing the amount of the judgment to $250,000.00. Southern and Champion agreed, without prejudice to their rights as against each other, to advance payment to plaintiff of this $250,000.00, Champion advancing $137,500.00 and Southern advancing $112,500.00, the parties agreeing that in event it should be determined that Southern is not entitled to indemnity from Champion, it would repay $137,500.00 to Champion, and in event it be determined that Southern is entitled to complete indemnity from Champion, it should recover $112,500.00 from Champion. This judgment further stipulated that Champion's right to recover from Southern $97,500.00 on account of the payment theretofore made by Champion to plaintiff should be determined according to law and not according to the outcome of Southern's claim for indemnity, it being Southern's position that Champion was not entitled to recover said amount from Southern under any circumstances and it being Champion's position that it was entitled to recover said amount.

Upon trial of the issues between Southern and Champion, the evidence indicated that plaintiff was injured under the following circumstances:

On 28 January 1967 plaintiff went as a member of a Southern train crew to Champion's railroad yard which services its large industrial plant at Canton, N. C., for the purpose of removing empty railroad cars therefrom. This yard is located on Champion's property, is enclosed by a wire fence which has a gate at the eastern end, and contains six railroad tracks, numbered 9 through 14 inclusive. Two of these, #13 and #14, had been designated interchange tracks, #14 being used for placement thereon of empty woodrack cars by Champion's own yard crew and #13 for placement thereon of Champion's miscellaneous cars. At approximately the same time each day Southern sent one of its locomotives and crews to the Champion yard for the purpose of "pulling" or "dragging" it of empty woodrack and miscellaneous cars. On 28 January 1967 the crew of which plaintiff was a member entered Champion's yard at the customary time, traveling on a Southern locomotive through the gate at the eastern end of the yard. They entered the yard on track 9, which was the lead track which connected the yard with Southern's main line track running from Asheville to Murphy. They proceeded to track 14 and dragged all of the empty woodrack cars therefrom and placed these on the

main line track preparatory to having them hauled back to Asheville. They then entered on track 13 from the east and coupled up with empty cars thereon and "stretched" them, meaning to pull out the slack between the cars. After doing this, and while Southern's engine and the cars to which it was attached were standing still, plaintiff noticed two cars on track 13 to which the train had failed to couple. These were sitting 10 to 12 feet from the cars to which Southern's engine was attached, and plaintiff noticed there were no cars to the west of these two cars. Plaintiff proceeded to open the knuckles on these two cars preparatory to coupling with them. At this time a crew of Champion employees was operating a switch engine some distance away on the west end of the yard. This crew shoved five cars onto track 13, causing them to roll freely in an easterly direction on the track until they collided with the two cars on which plaintiff was engaged in opening the knuckles. Plaintiff was dragged beneath these cars, the wheels of which ran over and severed his legs. There was evidence that Champion's crew made no investigation prior to shoving the five cars onto track 13 to ascertain whether any of Southern's employees were working thereon and that they gave no signal from Champion's locomotive prior to making that movement. Other evidence will be referred to in the opinion.

The jury answered the issue submitted to it as follows:

"Was the plaintiff, Forest Beachboard, injured through the negligence of U. S. Plywood-Champion Papers, Inc., as alleged in the Third-Party Complaint?

Answer: Yes."

On this verdict the court entered judgment holding as a matter of law that, under the contract dated 8 November 1905 and related contract documents, Southern was entitled to full indemnity from Champion for the $112,500.00 which had been advanced by Southern to plaintiff pursuant to the consent judgment of 11 May 1971. From judgment that Southern recover $112,500.00 from Champion and that Champion recover nothing from Southern on its cross actions, Champion appealed.

*W. T. Joyner; and Bennett, Kelly & Long by Harold K. Bennett for Southern Railway Company, Third-Party Plaintiff-Appellee.*

*Uzzell & DuMont by Harry DuMont for U. S. Plywood-Champion Papers, Inc., Third-Party Defendant-Appellant.*

PARKER, Judge.

Appellant assigns error to the denial of its motions to dismiss Southern's third-party complaint for failure to state a claim upon which relief can be granted, for judgment on the pleadings, for summary judgment, and for directed verdict, all of which were predicated, at least in part, on appellant's contention that the contract of 8 November 1905 was not binding upon it and, if considered so, when correctly interpreted did not, and when lawfully enforced could not, impose upon appellant the obligation to indemnify Southern under the circumstances of this case. We first consider appellant's contention that the contract, whatever its correct interpretation and legal enforceability as an indemnity contract, was in any event not binding upon it.

[1, 2] The contract of 8 November 1905 was on its face expressed to be between Southern, on the one part, and Champion Fibre Company, an Ohio corporation, on the other. The name of the Fibre Company was signed to this contract by its president, Peter G. Thomson. It appears from the record and exhibits before us that at the date of this contract the Fibre Company was not yet in existence and that it was not actually incorporated until 3 January 1906, when it became incorporated under the laws of Ohio. Its corporate charter lists Peter G. Thomson as one of the original incorporators. While no formal ratification of the agreement has been shown, the record does indicate that after the Fibre Company came into corporate existence it acted under the contract and for many years accepted its benefits, and it is the general rule under such circumstances that by accepting the benefits the company becomes bound to perform the obligations incident to such a contract. 18 Am. Jur. 2d, Corporations, § 122, p. 664. However that may be, the record before us further indicates that the following transactions occurred: By instrument dated 12 October 1936 the Fibre Company conveyed all of its assets to its parent corporation, The Champion Paper & Fibre Company, also an Ohio corporation, in complete cancellation or redemption of all of Fibre Company's outstanding shares. The surviving parent corporation, The Champion Paper & Fibre Company, by written agreement dated 24 September 1937 executed by it and by Southern, expressly agreed with Southern that it would be bound by the contract of 8 November 1905, to which reference was expressly made, "to the same extent and with like effect

as if the said The Champion Paper & Fibre Company . . . had originally made and executed" said agreement. By "Supplemental Agreement" dated 28 July 1959, also executed by Southern and by The Champion Paper & Fibre Company, certain changes and extensions in the location of the industrial tracks serving Champion's plant were provided for, and by this Supplemental Agreement the contract of 8 November 1905 was again expressly recognized as continuing in effect. It also appears that The Champion Paper & Fibre Company, after changing its corporate name in 1961 to Champion Papers, Inc., merged with U. S. Plywood Corporation in 1967 to become the corporate entity which appears in the present action as the third-party defendant, and which for convenience is in this opinion referred to simply as "Champion." We hold that by virtue of the foregoing transactions, Champion became bound by the contract of 8 November 1905 and became obligated to perform the duties which were therein imposed on the Fibre Company.

[3]   We next consider appellant's contention that the 8 November 1905 contract, properly interpreted in accordance with appellant's views, does not obligate it to indemnify Southern for the amount for which Southern became liable to plaintiff on account of his personal injuries in this case. In this connection appellant argues that the word "damage" as used in the covenant contained in paragraph 5 of the contract, under which appellant's predecessor, the Fibre Company, agreed "[t]hat it will indemnify and save harmless the Southern Company against any and all damage resulting from the negligence of the Fibre Company, its servants and employees," is a word of art used solely to designate injuries to property and does not include injuries to persons. Accepted authorities, however, do not support appellant's view, and we perceive nothing in the context in which the word "damage" was here employed why its meaning should be so narrowly confined. Black's Law Dictionary (4th Ed.) defines "damage" as "[l]oss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's *person* or property," and Webster's Third New International Dictionary defines "damage" as "injury or harm to *person*, property, or reputation." (Emphasis added.) We hold that the phrase "any and all damage," as employed in the contract now before us, was intended by the parties and did include injuries to persons and was not limited, as appellant contends, merely to property losses.

[4]  Appellant next contends that, even if it be conceded that the words "any and all damage" includes a loss involving personal injuries, the indemnification provision here before us was intended to apply only to damage caused by the sole negligence of Champion, and that Southern having also been found guilty of negligence in this case, Champion has no obligation to indemnify it. To adopt appellant's interpretation effectively robs the indemnity clause of nearly all meaning. Three categories of "damage resulting from the negligence" of Champion are possible: (1) damage to property of Southern; (2) damage to property of Champion; and (3) damage to person or property of a third party (including an employee of either). Assuming in a particular case that damage is caused by negligence of Champion (which must exist, else the clause by its own language does not become operative), and that Southern is not negligent, then quite apart from the indemnity contract Southern would have a right of recovery against Champion for damage in the first category and would not itself be responsible for damage in the second and third categories. In such a case there would seem little reason for the indemnity provision. Indeed, it is *only* when damage results from the negligence both of Southern and Champion that the provision attains any real meaning. By inserting the provision in their contract the parties obviously contemplated that there might be claims for indemnity, and they must have been cognizant of the fact that in the ordinary case the occasion for Southern seeking indemnity would not arise unless it had itself been guilty of some fault, for otherwise no judgment could be recovered against it. In *Gibbs v. Light Co.*, 265 N.C. 459, 144 S.E. 2d 393, our Supreme Court held that an indemnity provision in the contract then before it provided indemnity against claims based on the indemnitee's negligence, pointing out that otherwise it had "no meaning or purpose." Consistent with that reasoning, we hold that the language employed in the indemnity provision in the contract now before us obligates Champion to indemnify Southern in a case such as this, in which it has been determined that plaintiff's injuries resulted from negligence of both Champion and Southern. While certainly any case involving interpretation of a written contract must be decided upon the exact words used by the parties viewed in the light of relevant circumstances peculiar to that case, other courts interpreting indemnity provisions in railroad spur track agreements have reached results consistent with our present holding. See cases in Annotation: "Construction and

effect of liability exemption or indemnity clause in spur track agreement," 20 A.L.R. 2d 711.

[5]   Finally, appellant contends that to interpret the indemnity provision so as to make it operative to protect Southern from consequences of its own negligence renders the provision void as against public policy, citing the well established principle that a public service corporation or public utility cannot contract so as to escape liability from its own negligence occurring in the regular course of its business or in performing one of its duties of public service. However, "[e]ven a public service corporation is protected by an exculpatory clause when the contract is casual and private and in no way connected with its public service." *Gibbs v. Light Co., supra.* Such was the contract here. Under it Southern obligated itself to perform acts and render services in connection with Champion's privately owned railroad tracks and yard which it was not obligated to perform for the public generally. An exculpatory clause in a similar contract was held valid to protect the railroad in *Slocumb v. R. R.,* 165 N.C. 338, 81 S.E. 335. By entering into and performing the agreement under which it furnished services on Champion's yard, Southern subjected its equipment and employees to special hazards to which they were not normally exposed while furnishing services to the general public on Southern's own tracks. As the present case dramatically illustrates, one of these especial hazards was that a Southern employee might be injured by the active negligence of Champion's employees engaged in operating Champion's switch engine in the yard at the same time Southern's employees were present. We perceive no grounds of public policy why the parties could not validly contract for Southern's indemnity under such circumstances. Moreover, "[t]here is a distinction between contracts whereby one seeks to wholly exempt himself from liability for the consequences of his negligent acts, and contracts of indemnity against liability imposed for the consequences of his negligent acts. The contract in the instant case is of the latter class and is more favored in law." *Gibbs v. Light Co., supra.* We hold the indemnity provision here involved valid and enforceable against Champion in this case. Appellant's assignments of error based on the contrary assumption are overruled.

[6]   Appellant's contention that Southern is not entitled to invoke the indemnity clause in the 8 November 1905 contract

because "it neither alleged nor offered evidence to establish that it had undertaken to comply with the alleged contract" is without merit. In general, "[w]here a complaint is based on contract, all that is necessary to state is the making of the contract, the obligation thereby assumed, and the breach." 61 Am. Jur. 2d, Pleading, § 89, p. 524. This Southern did in its third-party complaint, to which Champion responded in its answer by what was in effect simply a general denial. If as a defense Champion intended to rely upon some asserted breach or failure to perform by Southern, it should have set forth affirmatively any such failure of consideration or "other matter constituting an avoidance or affirmative defense." G.S. 1A-1, Rule 8(c). Only when the contract sued upon contains some condition precedent to defendant's liability thereunder is it necessary for plaintiff to plead performance, 61 Am. Jur. 2d, Pleading, § 94, p. 528, and even in such case "it is sufficient to aver generally that all conditions precedent have been performed and have occurred," in which event any denial thereof upon which defendant intends to rely "shall be made specifically and with particularity." G.S. 1A-1, Rule 9(c). The 8 November 1905 contract contains no express condition precedent to make the indemnity clause therein operative, and we find nothing in the contract which by reasonable construction implies that full and exact performance by Southern must first be established before the indemnity clause comes into play. We hold, therefore, that Southern was not required to allege and prove full performance on its part but that it was incumbent upon Champion to come forward with allegation and proof as to any asserted failure of performance by Southern upon which it intended to rely to relieve it of its indemnity obligation. Champion made no such allegation and there is no evidence in the record to indicate that Southern failed to comply substantially with its obligations under the contract.

[7] Appellant assigns error to the trial judge's refusal to submit to the jury an issue as to plaintiff's contributory negligence. In this we find no error. Southern's third-party action against Champion was not predicated upon Champion's liability to plaintiff under the general law of torts, under which plaintiff's contributory negligence would have been a defense, but upon the indemnity contract under which Champion became obligated to indemnify and save harmless Southern "against any and all damage resulting from the negligence" of Champion. The jury determined that plaintiff's injuries did result from

Champion's negligence. As a consequence of that negligence, Southern became obligated to plaintiff under F.E.L.A. for its failure to furnish him a safe place to work, and Champion in turn by contract became obligated to indemnify and save harmless Southern. Under these circumstances the contributory negligence of plaintiff, if any existed, would not have been a defense to Southern's contract action against Champion to enforce the indemnity agreement. *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills*, 211 F. 2d 785 (10th Cir. 1954), cert. denied, 348 U.S. 832; Annotation: "Claim, for Contribution or Indemnity Against Joint Tortfeasor, of Employer Liable to Employee under Federal Employer's Liability Act, As Affected by Contributory Negligence of Employee," 6 A.L.R. 3d 1307. Plaintiff's contributory negligence, if any, was available in mitigation of damages in plaintiff's F.E.L.A. action against Southern, but it should be noted that in this case the amount of plaintiff's recovery was ultimately settled by the consent judgment of 11 May 1971 in which all parties, including Champion, joined.

[8] During the trial Champion offered in evidence and the court excluded a certain written "Memorandum of Understanding" dated 6 September 1905, which was signed by Peter G. Thomson and by Southern. This document was properly excluded from evidence. It expressly provided that "[t]his memorandum is to be used as a basis for a formal contract to be prepared by the Railway Company for execution within the next ten days, or as early thereafter as possible," and in general it dealt with the same matters which were expanded and covered in greater detail by the written contract of 8 November 1905. It is clear that the later contract was intended by the parties to supersede all prior agreements.

The trial court also properly excluded from evidence a document dated 6 December 1916 which was executed solely by the Fibre Company and by which it conveyed to Southern an easement to use a strip of land 12½ feet wide on either side of the center line of industrial tracks on the Fibre Company's property. This document was not relevant to any issue in this case.

[9] The court properly refused to permit appellant's counsel the right to argue to the jury the legal effect of the indemnity contract between the parties. The sole issue before the jury was whether plaintiff had been injured through negligence of Champion. The jury could not properly base its findings on that

issue upon the legal consequences of its verdict under the written agreement between the parties. The legal consequences flowing from the jury's verdict in this case presented solely a question of law for the court to decide. G.S. 84-14, which provides that "[i]n jury trials the whole case as well of law as of fact may be argued to the jury," does not authorize counsel to argue law which is not applicable to the issues properly presented for jury decision. *In re Will of Farr*, 277 N.C. 86, 175 S.E. 2d 578.

We have carefully examined all of appellant's remaining assignments of error which are brought forward in its brief and find no prejudicial error.

No error.

Chief Judge MALLARD and Judge MORRIS concur.