Lunsford v. ViaOne Servs., LLC, 2020 NCBC 78A.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 3973

J. BROOK LUNSFORD and
LUNSFORD GROUP, INC. f/k/a JBL
COMMUNICATIONS, INC.,

      Plaintiffs and
      Counterclaim Defendants,

    v.

VIAONE SERVICES, LLC; and DAVID
DORWART,

      Defendants,

   and

JBL COMMUNICATIONS, LLC,

      Defendant and
      Counterclaim Plaintiff,

    v.

CAMERON GUNTER; CLIFFORD
CHURCHILL; FIBER OPTIC
SOLUTIONS LLC; PIMLICO, INC;
OSPREY COMMUNICATIONS, LLC;
CVO ENTERPRISES INC; and
RUSSELL BROWN,

      Counterclaim
      Defendants.

**AMENDED ORDER AND OPINION
ON DEFENDANTS' MOTION
TO DISMISS**

1. This action arises from the sale of a telecommunications construction company. The sellers are the plaintiffs here and have asserted claims against the buyer and two others for fraud and breach of several contracts related to the sale. In

response, the defendants have moved to dismiss all claims. (ECF No. 58.) For the following reasons, the Court **GRANTS** the motion in part and **DENIES** it in part.

*Pearce Law PLLC, by Bradley E. Pearce, for Plaintiffs/Counterclaim Defendants J. Brook Lunsford and Lunsford Group, Inc.*

*Parker Poe Adams & Bernstein LLP, by Michael G. Adams, Jami J. Farris, and Morgan H. Rogers, for Defendants ViaOne Services, LLC and David Dorwart, and for Defendant/Counterclaim Plaintiff JBL Communications, LLC.*

*Law Offices of Jamie A. Stokes, PLLC, by Jamie A. Stokes, for Counterclaim Defendants Cameron Gunter, Clifford Churchill, Fiber Optic Solutions LLC, Pimlico, Inc., CVO Enterprises Inc., and Russell Brown.*

*O'Hagan Meyer, PLLC, by Wood W. Lay and Aretina K. Samuel-Priestley, for Counterclaim Defendant Osprey Communications, LLC.*

Conrad, Judge.

I.
FACTUAL BACKGROUND

2.    The following background is drawn from the allegations of the second amended complaint and the documents attached to or incorporated within it. (*See* 2d Am. Compl., ECF No. 52 ["Compl."].)

3.    JBL Communications, Inc. was a pay-to-build contractor that built and maintained telecommunications systems and networks in and around North Carolina. (*See* Compl. ¶ 18.) The company now goes by the name Lunsford Group, Inc. but has been dubbed Old JBL by the parties. The "Old" in Old JBL alludes to the central event in this case—the July 2018 sale of Old JBL's assets to JBL Communications, LLC, or New JBL as the parties call it. (*See* Compl. ¶¶ 15, 19.)

4.    The complaint gives few details about how the sale came together or who the key players were.  It seems that New JBL was truly new—a Delaware company created for the purpose of buying Old JBL's assets.  (*See* Compl. ¶¶ 6, 22.)  New JBL's majority member is ViaOne Fiber and Engineering, LLC (not to be confused with ViaOne Services, LLC, one of the defendants here), but the complaint questions the existence of that entity and does not mention any negotiations between it and Old JBL.  (*See* Compl. ¶¶ 172, 175.)  The only thing resembling presale discussions is an alleged conversation between Brook Lunsford (Old JBL's sole shareholder) and David Dorwart (the chairman and CEO of Texas-based ViaOne Services).  (*See* Compl. ¶¶ 4, 21, 44.)  Dorwart supposedly told Lunsford that New JBL would continue Old JBL's business with new capital investment.  (*See* Compl. ¶ 21.)  The date of that conversation is not stated, though.

5.    In any event, the centerpiece of the sale was an asset purchase agreement, (ECF No. 52.1 ["APA"]).  That agreement conveyed to New JBL "all of the tangible and intangible assets and properties of" Old JBL.  (APA § 2.1(a).)  It also gave New JBL the right to use Old JBL's general contractor's license for a short time.  (*See* Compl. ¶ 23; APA § 2.1(a)(iv).)  In return, Old JBL and Lunsford received cash and other consideration, including minority membership in New JBL.[1]  (*See* APA § 3.2; APA p.6 ("Rollover Equity"); Compl. ¶¶ 24, 174, 190.)  Lunsford stayed on as a

---

[1] There is some confusion about whether Old JBL or Lunsford owns the membership interest.  (*Compare* Compl. ¶ 174, *with* Compl. ¶¶ 186, 190.)

consultant to New JBL, an arrangement governed by a separate consulting agreement, (ECF No. 52.3 ["Consulting Agrmt."]).

6.  New JBL financed part of the purchase through a promissory note, (ECF No. 52.2 ["Note"]).  The note is "subordinate and junior" to "Senior Debt"—a bank loan—owed by New JBL.  (Note § 13.)  Old JBL agreed to defer all principal and interest payments on the note until after New JBL repays the bank.  (Note § 1.)  The note also gives New JBL the right to "set-off and reduce" the principal amount for various reasons, including some permitted by the asset purchase agreement.  (Note § 5.)

7.  One potential basis for a set-off would be a reduction of the purchase price after closing.  The purchase price includes a lump sum of $6.7 million to be adjusted up or down at closing based on Old JBL's estimate of its working capital.  (*See* APA §§ 3.2(a), 3.3(a); *see also* Compl. ¶ 24.)  That sum is supposed to be adjusted again after closing based on a second calculation of working capital, this time prepared by New JBL and presumably to correct errors in the preclosing estimate.  (*See* APA § 3.3(b), (c).)  The asset purchase agreement gives New JBL 90 days from closing to deliver its calculation, followed by a period for Old JBL to lodge objections and for the two sides to resolve any disputes through binding arbitration.  (*See* APA § 3.3(b); Compl. ¶¶ 133, 135.)  The final figure determines whether New JBL paid too much or too little at closing.  (*See* APA § 3.3(c).)  If too much, then New JBL could set off whatever Old JBL owed against the amount of the promissory note after giving written notice.  (Note § 5; *see also* APA §§ 3.4, 9.7.)

8. Despite getting several extensions of the initial 90-day period, New JBL never delivered its calculation of working capital. (*See* Compl. ¶¶ 134, 136, 139.) Even so, nearly a year after the sale, New JBL reported in a financial statement that it had reduced the note's principal balance by over $700,000. (*See* Compl. ¶¶ 109, 121.) Old JBL did not receive written notice of that set-off. (*See* Compl. ¶¶ 136, 139.) And the reason New JBL gave for the set-off was poor financial performance—nothing to do with the working capital tally. (*See* Compl. ¶ 122.)

9. Old JBL and Lunsford say the set-off was improper. They also say it was an accounting trick. Soon after acquiring Old JBL's assets, New JBL went on a spending spree. It hired new employees, bought more equipment, and entered new markets. (*See* Compl. ¶¶ 31, 34.) Overstretched, New JBL became insolvent by the end of 2018. (*See* Compl. ¶¶ 118, 156.) Reducing the principal amount of the promissory note gave the false appearance of solvency. (*See* Compl. ¶¶ 127, 128.)

10. Indeed, New JBL revealed some of its financial difficulties to Lunsford in April 2019. (*See* Compl. ¶ 43.) The next month, New JBL's management team met in Asheville, North Carolina. Lunsford was there. So was Dorwart. (*See* Compl. ¶ 44.) They discussed New JBL's failure to release nearly $350,000 in retainages that it had agreed to pay to Old JBL's subcontractors. (*See* Compl. ¶¶ 51, 56.) They also discussed New JBL's difficulty in obtaining its own general contractor's license. (*See* Compl. ¶¶ 62–64.) At some point, Dorwart "assured Lunsford" that New JBL "valued" his contributions. (Compl. ¶ 46.)

11. Later that summer, Lunsford discovered that New JBL had used Old JBL's credit lines with third-party vendors. (*See* Compl. ¶ 65.) New JBL never told Lunsford what it was doing and didn't ask for permission either. (*See* Compl. ¶¶ 69, 70, 74, 75.) Likewise, the third parties didn't know they were dealing with New JBL rather than Old JBL. (*See* Compl. ¶ 72.) When some of the bills became overdue, Lunsford's credit took a hit. (*See* Compl. ¶¶ 67, 76, 77.)

12. Other issues cropped up around the same time. New JBL missed four monthly payments to Lunsford under the consulting agreement. (*See* Compl. ¶¶ 85, 86, 151, 152.) Short of cash, New JBL also asked Lunsford to buy a lift truck. (*See* Compl. ¶¶ 88, 89.) When Lunsford later asked for reimbursement, New JBL issued a check but then stopped payment. (*See* Compl. ¶¶ 90–92.)

13. Lunsford filed suit in September 2019 and amended the complaint shortly after to add Old JBL as a plaintiff. Together, Lunsford and Old JBL ("Plaintiffs") accused New JBL of breaching the asset purchase agreement, the promissory note, and the consulting agreement. They also sought a declaratory judgment that New JBL's breaches relieved them of their own obligations under the contracts. And they sought to hold ViaOne Services liable for New JBL's acts on a theory of veil piercing. New JBL and ViaOne Services moved to dismiss all claims. (ECF No. 20.)

14. At a hearing on that motion, Plaintiffs' counsel forecasted a second amendment. With consent, the Court granted leave to amend and denied the motion to dismiss as moot. The second amended complaint retains the contract and

declaratory-judgment claims. It adds fraud as a new claim and Dorwart as a new defendant.

15. New JBL, Dorwart, and ViaOne Services ("Defendants") contend that the amendment did not cure the defects identified in the original motion to dismiss and again move to dismiss all claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Dorwart and ViaOne Services also contend that the Court lacks personal jurisdiction over them. The parties have fully briefed all issues, and the Court elects to decide the motion without a second hearing. *See* Business Court Rule 7.4. The motion is now ripe for resolution.

II.
PERSONAL JURISDICTION

16. The Court begins with challenges to personal jurisdiction raised by Dorwart (a Pennsylvania resident) and ViaOne Services (a Texas company). This is usually "a two-step inquiry: does any statute grant jurisdiction over the defendant, and would exercising jurisdiction violate due process?" *JCG & Assocs., LLC v. Disaster Am. USA, LLC*, 2019 NCBC LEXIS 112, at *6 (N.C. Super. Ct. Dec. 19, 2019). Because Defendants do not challenge the first step, the Court skips to the second.

17. Due process requires that a defendant "have certain minimum contacts" with this State "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Sometimes, a nonresident defendant's contacts "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations,*

*S. A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). When that is the case, the courts of the forum State have general jurisdiction "to hear any and all claims against" the defendant. *Id.*

18.   The more common case is when the nonresident defendant has situational, rather than systematic, contacts with the forum State. In that context, jurisdiction depends on the "relationship among the defendant, the forum, and the litigation." *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014) (citation and quotation marks omitted); *see also Beem USA LLLP v. Grax Consulting LLC*, 373 N.C. 297, 303, 838 S.E.2d 158, 162 (2020). There must be some nexus between the forum and the underlying controversy such that "the cause of action arises from or is related to defendant's contacts with the forum." *Skinner v. Preferred Credit*, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006) (citing *Helicopteros Nacionales De Colombia, S. A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). This is known as "specific or case-linked jurisdiction." *Goodyear*, 564 U.S. at 919 (2011) (citation omitted).

19.   Plaintiffs bear the burden to establish a prima facie basis for personal jurisdiction. *See Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *8 (N.C. Super. Ct. Oct. 2, 2017) (citation omitted), *aff'd*, 371 N.C. 579, 821 S.E.2d 711 (2018). Both sides have offered evidence: a verified pleading from Plaintiffs opposed by a responsive affidavit and evidence from Defendants. The Court may, as a result, "determine the weight and sufficiency of the evidence presented." *Capitala Grp., LLC v. Columbus Advisory Grp. LTD*, 2018 NCBC LEXIS 183, at *3 (N.C. Super. Ct. Dec. 3, 2018) (citation and quotation marks omitted). Here, though, that isn't necessary.

Plaintiffs have not argued that Dorwart or ViaOne Services have the kind of continuous and systematic contacts with North Carolina that would support general jurisdiction. And as to specific jurisdiction, the disputes largely turn on the adequacy of Plaintiffs' jurisdictional allegations.

20. **ViaOne Services.** To establish jurisdiction over ViaOne Services, Plaintiffs rely on a theory of veil piercing. The few contacts that ViaOne Services is alleged to have with North Carolina do not appear to relate to the underlying controversy, and Plaintiffs do not argue otherwise. Instead, Plaintiffs contend that the Court should pierce the corporate veil and impute the jurisdictional contacts of New JBL to ViaOne Services.

21. "The general rule is that a corporation's contacts are not imputed to its affiliate for the purpose of personal jurisdiction." *Denver Glob. Prods., Inc. v. Hendrix*, 2017 NCBC LEXIS 216, at *4 (N.C. Super. Ct. Feb. 9, 2017) (citing *Wyatt v. Walt Disney World, Co.*, 151 N.C. App. 158, 168, 565 S.E.2d 705, 711 (2002)). Indeed, our courts do not lightly disregard the corporate form for any purpose. Veil piercing is reserved for the rare case in which an individual or entity uses a corporation as a mere instrumentality or alter ego to carry out a fraud or wrong. In that case, the injured party may seek relief from the individual or entity "who otherwise would have been shielded by the corporate form." *Green v. Freeman*, 367 N.C. 136, 145, 749 S.E.2d 262, 270 (2013).

22. Plaintiffs have not adequately alleged that New JBL is a mere instrumentality of ViaOne Services. The second amended complaint does not even

specify a legal relationship between the two. All it says is that ViaOne Services has some unexplained role in handling payroll deductions for New JBL's employees, (*see* Compl. ¶¶ 96, 103, 104), and that ViaOne Services "dominated and controlled New JBL by, among other things, controlling which of New JBL's creditors got paid and when such creditors got paid," (Compl. ¶ 161). Even if true, these allegations do not suggest that ViaOne Services controlled New JBL through the use of the *corporate form*. Nor does the alleged control over payment matters amount to the kind of "complete domination, not only of finances, but of policy and business practice" typically required to pierce the veil. *Green*, 367 N.C. at 145, 749 S.E.2d at 270 (quoting *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985)).

23. Furthermore, ViaOne Services offered an affidavit from Dorwart, who is New JBL's manager. (*See* Dorwart Aff., ECF No. 8.) This evidence shows that ViaOne Services is not a member or manager of New JBL and has no authority to direct the company's affairs. (*See* Dorwart Aff. ¶¶ 7, 11, 13–19.) ViaOne Services has a contract with New JBL to provide accounting, human resources, and related services. (*See* Dorwart Aff. ¶ 35.) The contract stresses that ViaOne Services "shall neither exercise control nor direction over" New JBL's business. (Dorwart Aff. ¶ 38.) No evidence suggests that this contractual relationship made New JBL a mere instrumentality of ViaOne Services.

24. In short, Plaintiffs have not offered any sound reason to impute New JBL's contacts with this State to ViaOne Services.[2] The Court concludes that it may not exercise jurisdiction over ViaOne Services and therefore dismisses all claims against it. *See Price v. Hagar Fin. Corp.*, No. COA03-280, 2004 N.C. App. LEXIS 316, at *9–10 (N.C. Ct. App. Mar. 2, 2004); *Weisman v. Blue Mountain Organics Distrib., LLC*, 2014 NCBC LEXIS 41, at *17–18 (N.C. Super. Ct. Sept. 5, 2014).

25. **Dorwart.** Plaintiffs advance a more traditional theory of personal jurisdiction for Dorwart. They allege that he traveled to Asheville, North Carolina in May 2019 to meet with Lunsford and others about New JBL's affairs. (*See* Compl. ¶ 44.) That contact, they contend, is enough to support personal jurisdiction, particularly given that Dorwart is New JBL's manager. (*See* Opp'n 17, ECF No. 65.)

26. Dorwart responds that the allegations related to the meeting in Asheville do not "actually support any of Plaintiffs [sic] claims" and therefore cannot establish specific jurisdiction. (Br. in Supp. 22, ECF No. 59.) The Court disagrees. The second amended complaint alleges that the meeting between Dorwart and Lunsford related to the substance of this dispute—namely, New JBL's financial struggles, its failures to meet contractual obligations, and its lack of transparency. (*See* Compl. ¶¶ 51, 62.) At that meeting, Dorwart allegedly "assured Lunsford that his input and contributions were valued" in an attempt "to deceive Lunsford as to the true state of affairs of New JBL." (Compl. ¶¶ 46, 47.) Plaintiffs' fraud claim, which is the only

---

[2] Plaintiffs have not argued that the Court should attribute Dorwart's jurisdictional contacts to ViaOne Services in his role as its CEO. Nor have they pointed to any relationship between ViaOne Services and ViaOne Fiber and Engineering, which is New JBL's majority member.

claim against Dorwart, partly arises from or at least relates to this in-person meeting in North Carolina.

27. This does not mean that Plaintiffs have adequately stated a claim for fraud; Dorwart and his codefendants also challenge the merits of that claim. But it does mean that exercising jurisdiction over Dorwart would not offend due process. The uncontroverted allegations show that Dorwart physically entered North Carolina for the purpose of addressing disagreements about New JBL's affairs. Dorwart should have reasonably anticipated being called into court here in North Carolina to answer claims related to that contact. *See Beem USA*, 373 N.C. at 306, 838 S.E.2d at 164 (reversing dismissal for lack of personal jurisdiction); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State . . . is certainly a relevant contact." (citations omitted)).

## III.
## FAILURE TO STATE A CLAIM

28. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (citation and quotation marks omitted).

29. In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019) (citation and quotation marks omitted). But the Court need not accept as true any "conclusions of law or unwarranted deductions of fact." *Wray v. City of Greensboro*, 370 N.C. 41, 46, 802 S.E.2d 894, 898 (2017). The Court also may consider documents "attached to and incorporated within [the] complaint" but may not consider matters outside the complaint. *Bucci v. Burns*, 2018 NCBC LEXIS 37, at *7–8 (N.C. Super. Ct. Apr. 25, 2018).

### A. Breach of Contract

30. Plaintiffs assert a claim against New JBL for breach of the asset purchase agreement and the promissory note, and Lunsford asserts a claim for breach of the consulting agreement. New JBL seeks to dismiss both. (*See* Br. in Supp. 4–5.)

31. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). If the contract "contains some condition precedent to defendant's liability," the plaintiff must also allege that the condition has been met. *Beachboard v. S. Ry. Co.*, 16 N.C. App. 671, 681, 193 S.E.2d 577, 584 (1972) (citation omitted); *see also* N.C. R. Civ. P. 9(c).

32. **Asset Purchase Agreement and Note.** The first claim for relief centers on New JBL's reduction of the principal amount of the promissory note. According to Plaintiffs, the set-off right hinges on the amount and direction (up or down) of any

purchase price adjustment allowed by the asset purchase agreement. But there was no adjustment, Plaintiffs say, because New JBL did not do its part to begin the process after closing. (*See* Compl. ¶¶ 125, 133, 139, 140.) Yet New JBL reduced the amount of the note anyway due to the company's poor "financial performance." (Compl. ¶¶ 122, 124.) Plaintiffs claim that New JBL breached the asset purchase agreement by impeding the purchase price adjustment process and by reducing the note's amount without notice and for a baseless reason. (*See* Compl. ¶¶ 125, 133, 139, 140.) They also claim that the reduction is a breach of the note, entitling them to recover the full principal balance plus interest. (*See* Compl. ¶¶ 125, 140.)

33. New JBL argues that Plaintiffs have jumped the gun. The promissory note is subordinated to "Senior Debt" in the form of a bank loan. (Note § 13.) The note states that payments become due only "following the repayment in full of the Senior Debt." (Note § 1; *see also* Note § 13 ("Notwithstanding anything in this Note to the contrary, the obligations of [New JBL] in respect of any payment of interest or principal on this Note shall be subordinate and junior in right of payment to the Senior Debt.").) New JBL contends that repayment of the loan is a condition precedent to its performance under the note, that Plaintiffs have not alleged that the condition has been met, and that the claim should be dismissed as a result. (*See* Br. in Supp. 4.)

34. Plaintiffs do not dispute that repayment of the bank loan is a condition precedent. *See Craftique, Inc. v. Stevens & Co., Inc.*, 321 N.C. 564, 567, 364 S.E.2d 129, 131 (1988) ("The use of language such as 'when,' 'after,' and 'as soon as' clearly

indicates that a promise will not be performed except upon the happening of a stated event, i.e., a condition precedent."). Instead, in their opposition to the original motion to dismiss, they argue it is unnecessary to plead that a contractual condition precedent has been met. (*See* ECF No. 25 at 8–9.) This is not correct. Our appellate courts require—and our Rules of Civil Procedure envisage—that a plaintiff must plead performance of any condition precedent to a defendant's liability, even though particularity isn't required. *See Beachboard*, 16 N.C. App. at 681, 193 S.E.2d at 584; N.C. R. Civ. P. 9(c) ("[I]it is sufficient to aver generally that all conditions precedent have been performed or have occurred."). Plaintiffs haven't done so and therefore haven't stated a claim for breach of the promissory note. *See Upchurch v. Sapp*, 2020 NCBC LEXIS 118, at *6 (N.C. Super. Ct. Oct. 8, 2020) (dismissing contract claim for failure to plead performance of condition precedent).

35. The same cannot be said for the alleged breach of the asset purchase agreement. Although Plaintiffs lump that agreement together with the note, the alleged breaches are distinct. Section 3.3 of the asset purchase agreement, which contains no condition precedent, requires New JBL to deliver a calculation of working capital so the parties can determine the amount of any postclosing adjustment to the purchase price. (*See* APA § 3.3(b), (c).) Plaintiffs allege New JBL never delivered its calculation (leaving the adjustment process in limbo) yet set off the note under section 3.4 anyway for an impermissible reason. (*See, e.g.*, Compl. ¶¶ 122, 124, 139.) That is enough to state a claim for breach of contract. *See Bennett v. Bennett*, 2019 NCBC LEXIS 47, at *4 (N.C. Super. Ct. Aug. 6, 2019) (denying motion to dismiss and noting

that "our appellate courts routinely reverse trial court orders that require anything more" than an allegation of a valid contract and its breach (citations omitted)); *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at \*10 (N.C. Super. Ct. June 19, 2019) (same).

36. The Court therefore grants the motion to dismiss the claim for breach of the promissory note but denies the motion to dismiss the claim for breach of the asset purchase agreement.[3]

37. **Consulting Agreement.** Lunsford claims that New JBL breached the consulting agreement by failing to pay his monthly consulting fee. (*See* Compl. ¶¶ 145–54.) New JBL moves to dismiss the claim because the second amended complaint does not specifically allege that any amount was due or past due at the time Lunsford filed suit. It also argues that Lunsford may not be entitled to all the relief he seeks because the consulting agreement does not have an acceleration clause. (*See* Br. in Supp. 5.)

38. As alleged, New JBL agreed to pay Lunsford more than $8,000 per month but did not pay "the consulting fee as and when due." (Compl. ¶¶ 151, 152; *see also* Compl. ¶¶ 82, 87, 146.) By August 2019, New JBL had missed four payments. (*See* Compl. ¶ 86.) These allegations suffice to put New JBL on notice of the events giving

---

[3] Defendants also contend that all claims, including the claim for breach of the asset purchase agreement, are barred by a covenant not to sue contained in a subordination agreement that Old JBL and New JBL were parties to. The second amended complaint does not attach or cite that agreement, and Defendants do not clearly explain how the covenant bars any claim other than the claim for breach of the note. The Court concludes that it would be more appropriate to assess the effect of the subordination agreement at summary judgment, rather than under the Rule 12(b)(6) standard.

rise to the claim. Lunsford was not required to plead greater detail or to prove his right to full relief. The Court therefore denies the motion to dismiss the claim for breach of the consulting agreement. *See Bennett*, 2019 NCBC LEXIS 47, at *4; *Vanguard Pai Lung*, 2019 NCBC LEXIS 39, at *10.

### B. Fraud and Punitive Damages

39. Plaintiffs base their fraud claim on an assortment of unrelated representations and omissions. (*See, e.g.*, Compl. ¶¶ 72, 89, 182, 185, 193, 195–96, 202.) Defendants argue that the allegations are not stated with particularity and lack key elements. (*See* Br. in Supp. 10–14.)

40. Fraud has five "essential elements": (a) a false representation or concealment of a material fact, (b) calculated to deceive, (c) made with intent to deceive, (d) that did in fact deceive, and (e) that resulted in damage to the injured party. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (citations omitted). For claims of fraudulent concealment or omission, "Plaintiffs also must allege that all or some of the Defendants had a duty to disclose material information to them, as silence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (citing *Griffin v. Wheeler-Leonard & Co., Inc.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976)); *see also Brewer v. Grue*, 2020 NCBC LEXIS 96, at *8 (N.C. Super. Ct. Aug. 28, 2020).

41. Unlike contract claims, fraud claims must be pleaded with particularity. *See* N.C. R. Civ. P. 9(b). "Plaintiffs must allege the 'time, place and content' of the

misrepresentation, the 'identity of the person making the representation,' and 'what was obtained as a result.'" *Bucci v. Burns*, 2017 NCBC LEXIS 83, at *8 (N.C. Super. Ct. Sept. 14, 2017) (quoting *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981)). For fraudulent concealment, Plaintiffs must allege:

> (1) the relationship between plaintiff and defendant giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what the defendant gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence*, 2007 NCBC LEXIS 20, at *9 (citation and alterations omitted). "Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 277, 715 S.E.2d 541, 549 (2011).

42. Plaintiffs' allegations fall short across the board. They allege, for example, that New JBL asked Lunsford to buy a lift truck, issued a check to reimburse him, and then stopped payment on the check. (*See* Compl. ¶¶ 88–93, 186.) It's not clear what the misrepresentation was, but even if it were possible to intuit one, Plaintiffs do not allege who made the representation beyond a general reference to New JBL. "It is not sufficient to conclusorily allege that a corporation made fraudulent misrepresentations; the pleader in such a situation must allege specifically the individuals who made the misrepresentations of material fact . . . ." *Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 125, 254 S.E.2d 217, 220 (1979); *see also USA Trouser, S.A. de C.V. v. Williams*, 258 N.C. App. 192, 202–03, 812 S.E.2d 373, 380 (2018)

(affirming dismissal of fraud claim that did not allege the "identity of any specific person" making any misrepresentation).

43. Likewise, Plaintiffs allege that Dorwart falsely represented to Lunsford that millions of dollars would be invested in New JBL. (*See* Compl. ¶¶ 187, 188.) But Plaintiffs do not allege when or where this took place. Nor is it clear what Dorwart or New JBL obtained as a result. *See, e.g.*, *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 611, 659 S.E.2d 442, 450 (2008) (affirming dismissal of fraud claim that did not allege time or place of misrepresentation); *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006) (same).

44. These allegations all fall short for a second reason. At best, the purported misrepresentations were promises that Dorwart or New JBL didn't keep—one to invest money in New JBL and another (poorly defined) to reimburse the cost of the lift truck. Unfulfilled promises "generally do not give rise to an action for fraud." *Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *8 (N.C. Super. Ct. Mar. 27, 2018). There must be some allegation "from which a court and jury may reasonably infer that the defendant did not intend to carry out [the promissory] representations when they were made." *Whitley v. O'Neal*, 5 N.C. App. 136, 139, 168 S.E.2d 6, 8 (1969); *see also Braun v. Glade Valley Sch., Inc.*, 77 N.C. App. 83, 87, 334 S.E.2d 404, 407 (1985). Plaintiffs have not come close to alleging facts of that sort.

45. Next, Plaintiffs allege that New JBL hid its financial difficulties, including that it became insolvent by the end of 2018. (*See* Compl. ¶¶ 118, 156, 157 185.) Although not entirely clear, they also appear to allege that New JBL affirmatively

misrepresented its financial position by reducing the principal balance of the promissory note and reporting the reduction on its balance sheet and financial statements. (*See* Compl. ¶¶ 120, 121, 127, 128, 181.b.) Again, Plaintiffs do not identify "any specific person" who made the alleged misrepresentations. *USA Trouser*, 258 N.C. App. at 202–03, 812 S.E.2d at 380. And apart from a cursory reference to reliance, (*see* Compl. ¶ 195), Plaintiffs do not allege with particularity "why their reliance on the Defendants' silence was both reasonable and detrimental." *Lawrence*, 2007 NCBC LEXIS 20, at *12; *see also Beam v. Sunset Fin. Servs., Inc.*, 2019 NCBC LEXIS 56, at *17–18 (N.C. Super. Ct. Sept. 3, 2019) (granting motion to dismiss fraudulent concealment claim); *Island Beyond, LLC v. Prime Cap. Grp., LLC*, 2013 NCBC LEXIS 48, at *21 (N.C. Super. Ct. Oct. 30, 2013) (same).

46. The same is true for the allegation that New JBL concealed its use of Old JBL's credit lines with third parties. (*See* Compl. ¶¶ 65, 182.) There are no allegations identifying the individuals who supposedly had a duty to disclose the use of the credit lines. Nor are there any allegations that Plaintiffs actually relied on the omission or that their reliance was reasonable and detrimental. *See Lawrence*, 2007 NCBC LEXIS 20, at *12.

47. The Court therefore grants the motion to dismiss the fraud claim. That in turn necessitates dismissal of Plaintiffs' demand for punitive damages, which wholly depends on the fraud claim. *See* N.C.G.S. § 1D-15(a); *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C App. 19, 35, 581 S.E.2d 452, 463 (2003).

## C. Declaratory Judgment

48. Plaintiffs' final claim for relief is for a declaratory judgment. They seek a declaration that they "are relieved from all obligations to New JBL under" the contracts at issue due to New JBL's various breaches of the contracts. (Compl. ¶ 203.)

49. New JBL's arguments are scattershot. It begins by arguing that the declaratory-judgment claim is derivative of Plaintiffs' other claims and should be dismissed for the same reasons. (*See* Br. in Supp. 18–19.) Had New JBL made a clean sweep, it might have a point. Some claims remain, though.

50. Second, New JBL argues that a declaratory judgment would serve no useful purpose because the claim duplicates other claims. (*See* Br. in Supp. 18.) Not so. Plaintiffs have not asked the Court to declare merely that New JBL breached the asset purchase agreement and the consulting agreement. Rather, they seek a declaration that New JBL's breaches relieve them of their own contractual obligations. (*See* Compl. ¶ 203.) A declaration of that sort—or a ruling that Plaintiffs are not entitled to one—would clarify the parties' past and future relationship.

51. The third argument is that the claim fails on the merits. New JBL points to case law holding that a breach of an independent promise by one contracting party does not excuse nonperformance by the other. (*See* Br. in Supp. 19.) But our Supreme Court has cautioned that a motion to dismiss a declaratory-judgment claim should "not be allowed simply because the plaintiff may not be able to prevail." *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974). The question is whether the complaint alleges "an actual, genuine existing

controversy." *Id.* Here, it does. *See Johnson's Landing Homeowners Ass'n v. Hotwire Commc'ns, LLC*, 2018 NCBC LEXIS 113, at *10–11 (N.C. Super. Ct. Oct. 29, 2018) (denying motion to dismiss when complaint alleged an actual controversy even though "[w]hether [plaintiff] is entitled to such a declaration is uncertain").

52.     Fourth is a puzzling argument. Plaintiffs have alleged a past breach of the consulting agreement but have not alleged that New JBL will continue to miss payments into the future. New JBL contends that there is no actual controversy as a result and that a declaratory judgment is not proper. (*See* Br. in Supp. 20–21.) But the question is whether New JBL's past breach had the effect of excusing Plaintiffs' future performance. Whether New JBL will repeat the breach is not material to the controversy Plaintiffs have alleged.

53.     Last, New JBL argues that Lunsford lacks standing but only in part. The argument is that Old JBL, not Lunsford, has the right to receive notice of the exercise of the set-off right under the asset purchase agreement, meaning that a breach of the notice requirement could not give Lunsford standing to seek declaratory relief. (*See* Br. in Supp. 21; *see also* ECF No. 21 at 11–13.) There is no dispute, though, that Lunsford has standing to pursue declaratory relief based on a breach of the consulting agreement. This "partial" standing, if that is what Lunsford has, is enough to avoid dismissal of his claim. It also bears noting that Lunsford is a party to the asset purchase agreement and has rights and duties under that agreement. Whether he is entitled to the clarification of those rights and duties that he seeks may depend on further developments at summary judgment or trial.

54.     The Court denies the motion to dismiss the claim for a declaratory judgment.

IV.
CONCLUSION

55.     For these reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss as follows:

a.  The Court **GRANTS** the motion to dismiss all claims against ViaOne Services for lack of personal jurisdiction. The claims are dismissed without prejudice.

b.  The Court **GRANTS** the motion to dismiss the claims for breach of the promissory note and for fraud, as well as the prayer for punitive damages. The claims are dismissed with prejudice.

c.  In all other respects, the Court **DENIES** the motion.


**SO ORDERED**, this the 28th day of October, 2020.


                                        /s/ Adam M. Conrad
                                        Adam M. Conrad
                                        Special Superior Court Judge
                                         for Complex Business Cases